UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA JOBE, as guardian and on behalf of K.J., a minor; AMY GAGE, as guardian and on behalf of B.G., a minor; CRYSTAL CUYLER, as guardian and on behalf of D.M., a minor; CHANDA HUGHES, as guardian and on behalf of J.B., a minor; BRENDA SHEFFIELD, as guardian and on behalf of J.D., a minor; VIOLENE JEAN-PIERRE, as guardian and on behalf of F.J.P., a minor; and MICHELLE MINOR, as guardian and on behalf of J.P.; a minor; on behalf of themselves and all others similarly situated,

Case No. 8:12-cv-00568-SDM-MAP

Plaintiffs,

v.

GRADY JUDD, Polk County Sheriff, in his official capacity; KIM MARCUM, Captain, in her official capacity; and MICHAEL ALLEN, Major, in his official capacity,

Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' VERIFIED AMENDED COMPLAINT-INJUNCTIVE RELIEF SOUGHT AND INCORPORATED MEMORANDUM OF LAW**

Defendants, GRADY JUDD (hereinafter "the SHERIFF"), KIM MARCUM (hereinafter "MARCUM"), and MICHAEL ALLEN (hereinafter "ALLEN"), by and through the undersigned attorneys and pursuant to Rule 12(b)(6), Federal Rules of Civil Procedures, move the Court to Dismiss Plaintiffs' Verified Amended Complaint-Injunctive Relief Sought for failure to state a claim upon which relief can be granted. In support thereof, Defendants would show:

1. On or about March 21, 2012, Plaintiffs filed a Verified Amended Complaint-Injunctive Relief Sought. Therein, Plaintiffs purportedly seek declaratory and injunctive relief in the context of a Class Action on behalf of juveniles who are pre-trial detainees at the Central County Jail in Polk County. It is apparent from the Amended Complaint that at least some of the minor Plaintiffs are no longer at the Central County Jail, and that at least some of the minor Plaintiffs were being detained prior to trial after having been charged as adults, although the Complaint is not clear as to the current status of or charges as to any of the juveniles. To the extent understood by Defendants, the purported underlying civil rights violations alleged are that Defendants have (1) failed to protect the minor Plaintiffs from harm; (2) failed to provide constitutionally required educational and rehabilitative services; (3) unconstitutionally used chemical agents against the minor Plaintiffs; and (4) failed to provide for the mental health needs of the minor Plaintiffs who have been placed on suicide watch. Plaintiffs allege that such actions violate the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs also appear to assert that a pre-trial detention of juveniles in a facility that likewise houses adults is unconstitutional, despite the fact, as alleged in paragraph 8 of the Amended Complaint, that the Florida Legislature specifically authorizes same. Plaintiffs define the class as "[a]ll individuals who are under the age of eighteen," and describe smaller subclasses as all individuals under the jurisdiction of the juvenile court who are or will be in the future incarcerated at the Central County Jail.

2. The Verified Amended Complaint fails to state a claim upon which relief can be granted against MARCUM or ALLEN in their official capacities. It is well settled

that a claim against a governmental official or employee in his or her official capacity is simply a redundant claim against the governmental entity itself – i.e., the SHERIFF in this case.

3. Plaintiffs' failure to delineate between pre-adjudicated juveniles and juveniles charged directly as adults in their description of Plaintiffs, other juveniles described in the Verified Amended Complaint, or in the purported class, results in a failure of the Verified Amended Complaint to state a cause of action.

4. The Verified Amended Complaint further fails to state a claim upon which relief can be granted in that the basic underpinning of Plaintiffs' claims is a challenge to [the State of Florida's statutory authority with regard to juvenile detention as variously set-forth in Florida Statutes, including Chapter 985, Florida Statutes (2011)]; and [the State's Circuit Court's decisions with regard to Plaintiffs]. Plaintiffs cannot challenge those authorities by way of an action seeking declaratory or injunctive relief against the SHERIFF, and the Verified Amended Complaint should be dismissed.

5. Plaintiffs underlying factual allegations in support of and general prayer for declaratory injunctive relief are too vague and broad to state a cause of action or provide sufficient facts or details such that Defendants can otherwise respond thereto.

6. The Verified Amended Complaint fails to state a claim upon which relief can be granted based upon the Eighth Amendment to the United States Constitution. Plaintiffs are pre-trial detainees, and thus, their claims, to the extent they exist at all, are based upon the Fourteenth Amendment to the United States Constitution.

## **MEMORANDUM OF LAW**

### I.  Standard For Dismissal

A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  F.R.C.P. 8(a)(2).  While the Federal Rules of Civil Procedure do not require "detailed factual allegations," "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), 129 S. Ct. 1937, 1949 (quoting *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555 (2007)) "To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ibid.* (quoting *Twombly*, 550 U.S. at 570).  The "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly* at 555.

> [It] is not enough to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.

*Clark v. Sierra,* 837 F. Supp. 1179, 1181 (M.D. Fla. 1993).

Even when viewing the Verified Amended Complaint in a light most favorable to Plaintiffs, this court should dismiss it for failure to state a claim upon which relief can be granted.  *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003).  While a complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts that would entitle him or her to relief, a motion to dismiss a complaint should be granted on the basis of a dispositive issue of law where there are no alleged facts entitling the plaintiff to relief.  *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001); and *Brown v. Crawford County*, 960 F.2d 1002,1010 (11th Cir. 1992).

## II. Claims Against MARCUM and ALLEN In Their Official Capacities

The Verified Amended Complaint should be dismissed as to MARCUM and ALLEN in their official capacities, because such claims are nothing more than claims against the governmental entity itself. "It is well established that 'suits against an official in his or her official capacity are suits against the entity the individual represents.'" *Parker v. Williams*, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989); see also *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691 n. 55 (1978). Thus, a suit against an officer in his or her official capacity is simply a redundant way of asserting a plaintiff's claims against the governmental entity. *Wallace v. City of Montgomery*, 956 F. Supp. 965, 976 (M.D. Ala. 1996).

> In contrast to individual capacity suits, when an officer is sued under Section 1983, in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent . . . Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents . . . Consequently, a plaintiff cannot rely on a *respondeat superior* theory to hold a municipality liable for individual actions of its officers . . . Because suits against an municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists the need to bring official capacity actions against local government officials . . .

*Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1191).

## III. Failure To Delineate Between Pre-Adjudicated Juveniles And Juveniles Charged Directly As Adults

As stated by the Supreme Court, "under Florida law a child of any age can be prosecuted as an adult for certain crimes and can be sentenced to life without parole." *Graham v. Florida*, 130 S. Ct. 2011, 2025 (2010). Florida Court's have long recognized that there is no absolute right requiring children to be treated in a special juvenile system. See *State v. Keene,* 381 So.2d 1361 (Fla. 1980); *Johnson v. State*, 314 So.2d

573 (Fla. 1975). When a child has been transferred or indicted for criminal prosecution as an adult, "[t]he court shall order the delivery of a child to a jail or other facility intended or used for the detention of adults." Florida Statutes, Section 985.265. Thus, pursuant to Florida Statues, juveniles are and have been housed in jails or other facilities intended to be used for the detention of adults since long before 2011, when the Florida Legislature passed Senate Bill 2112, the statutory change that Plaintiffs allege as the foundation of their underlying claims. As such, even assuming such claims rises to the level of constitutional scrutiny, or can serve in some manner as a basis for this action, the failure of Plaintiffs to delineate between pre-adjudicated juveniles and juveniles charged directly as adults fails to provide sufficient notice of the nature or basis of Plaintiffs' claims to allow Defendants to adequately respond to same.

## IV.  The Complaint Attacks the Constitutionality of the Statute

Although Plaintiffs purport to allege a Section 1983 action, Plaintiffs fail to conceal their actual agenda – attacking the constitutionality of (1) Section 985.265, Florida Statutes, which permits juveniles charged with adult crimes to be detained pending trial in a facility that also separately detains adults[1] and (2) Section 985.688,

---

[1] Section 985.265(5) provides in pertinent part that:

> the Court shall order the delivery of a child to a jail or other facility intended or used for the detention of adults . . . [w]hen the child has been transferred or indicted for criminal prosecution as an adult . . . or when a child taken into custody in this state is wanted by another jurisdiction for prosecution as an adult. The child shall be housed separately from adult inmates to prohibit a child from having regular contact with incarcerated adults, including trustees. "Regular contact" means sight and sound contact. Separation of children from adults shall permit no more than haphazard or accidental contact. The receiving jail or other facility shall contain a separate section for children and have an adequate staff to supervise and monitor the child's activities at all times. Supervision and monitoring of children includes physical observation and documented checks by jail or receiving facility supervisor personnel at intervals not to exceed 15 minutes. This subsection does not prohibit placing two or more children in the

Florida Statutes, the recently passed statute that authorizes the Juvenile Court to order a juvenile under its jurisdiction to be detained pending adjudication in a county detention center that also separately detains adults.[2]

Plaintiffs' position seems to be based upon a juvenile's purported Fourteenth Amendment right to be free from detention in a facility that by sight and sound separately houses adults. Practically the entire introduction of Plaintiffs' complaint is devoted to the position that the housing of the juveniles in a detention facility that also separately houses adults is some kind of constitutional violation, regardless of the precautions and security that is taken to prevent juvenile/adult detainee contact:

> 2. Recently, as a cost savings measure, Polk County officials opted to cease housing all children in a designated juvenile detention center and transferred custody of these children to Sheriff Grady Judd. In the Fall of 2011, Sheriff Judd moved all children in his custody to the Polk County Jail, which primarily houses adults.
>
> 3. According to both the U.S. Centers for Disease Control and Prevention and the Office of Juvenile Justice and Delinquency Prevention, youth who are held in adult facilities are approximately 34 percent more likely than youth in juvenile facilities to be re-arrested [for] another crime. Ignoring the adverse public safety consequences of housing children in an adult jail, Sheriff Grady Judd trumpets the tax dollars he saves by subjecting

---

> same cell. Under no circumstances shall a child be placed in the same cell with an adult.

[2] Section 985.688(9)(f) provides in pertinent part: "A child who is placed in a county or municipal government juvenile detention facility must meet the detention criteria as established in this Chapter." Section 985.688(11)(a) provides in pertinent part that:

> a county is in compliance with this section if: . . . (1) the County provides the full costs for pre-adjudicated detention of juveniles, (2) [t]he county authorizes the County Sheriff . . . to provide pre-adjudication detention care for juveniles, (3) the county sheriff . . . is accredited by the Florida Corrections Accreditation Commission or American Correctional Association and (4) the facility . . . meets the Florida Model Jail Standards.

Chapter 20 of the Florida Model Jail Standards provides the detention criteria for pre-adjudicated juveniles. These standards include sight and sound separation of juveniles from adults.

children to violence, abuse and violations of their fundamental constitutional rights.  Unfortunately, any short-term savings Polk County generates by housing children—some as young as eight years old—in the adult jail is offset by the tremendous cost borne by the children who languish in Sheriff Grady Judd's custody.

. . . .

7. The United States Department of Justice has concluded that children housed in adult jails are 36 times more likely to commit suicide than children housed in a juvenile detention facility.  Like many adult facilities that house children, the Polk County Jail responds to children who manifest an intent to harm themselves with cruelty and deliberate indifference.  Sheriff Grady Judd's employees force children who need suicide protections to strip naked in view of their peers and then wear a "suicide suit" a short, sleeveless garment that leaves children's bodies exposed.  These children are then placed in the "cage" – a kennel-like structure that is empty with the exception of a hard, wooden bench. These children are deprived of adequate mental health care and are prohibited from participating in education, recreation or from communicating with their families.

8. In 2011, the Florida Legislature passed Senate Bill 2112 (SB 2112), a law that for the first time authorized Counties to house children facing juvenile charges in county jails rather than in the custody of the Florida Department of Juvenile Justice (DJJ).  Polk County Officials made the decision to expand the number of children in Sheriff Judd's custody pursuant to this law.

9. Polk County is the only county in Florida to have taken over the detention of preadjudicated juveniles under jail standards based on an adult correctional model rather than the protective juvenile justice standards developed over the years by professionals with expertise working with children.

10. Defendant Judd has boasted that his objective in incarcerating these children at the jail is to save the county large sums of money. Defendants' cost-cutting measures, however, have come at the expense of the children's safety and well-being.  Today, all children who are incarcerated while pending the resolution of charges against them in Polk County, whether charged as juveniles or adults, are jailed at the Polk County Jail.

11. All children in Sheriff Grady Judd's custody are deprived of the education, individualized treatment and rehabilitative services that are reasonably calculated to help youth make positive life decisions once they are released from custody.  Unless children are protected from these abuses and *removed from Sheriff Judd's custody*, they will likely cycle in

and out of his facilities – creating a public safety crisis that exposes Polk County taxpayers to tremendous legal liability.

(Doc. No. 3 pp. 1-4) (emphasis added) (footnotes omitted).

Section 985.688, Florida Statutes, provides the authority for juveniles ordered by the Juvenile Court to be detained pre-adjudication to be detained in a county detention facility ("Facility") pending adjudication. Pursuant to Section 985.26(2), Florida Statutes, the pre-adjudication detention cannot exceed twenty-one (21) days. Pursuant to Florida law, the Facility must be regularly inspected, and must comply with the Florida Model Jail Standards, which requires that both juveniles charged as adults and juveniles detained pre-adjudication be housed separately out of sight and sound from adults.

Plaintiffs do not and cannot allege that Sheriff Judd has violated this law. Plaintiffs do not contend that the juveniles are housed with adults or can see or hear adults. Plaintiffs do not assert that the Facility is not being inspected or that the Florida Model Jail Standards are not being followed. Rather, Plaintiffs constitutionally contest that Florida law allows for juveniles and adults to be detained separately in the same facility. (*See* Doc. No. 3 ¶¶ 8-11.) Plaintiffs' contentions attack the constitutionality of Chapter 985, Florida Statutes.[3] The real issue permeating the Amended Complaint is not how the juveniles are treated on a day-to-day basis but that they are being detained in the same location as adults, despite the precautions taken to ensure no juvenile/adult detainee contact. As set forth above, Plaintiffs appear to contend throughout the entire introduction section of the Amended Complaint that the change in Florida law allowing

---

[3] Plaintiffs concentrate the thrust of their constitutional attack on Section 985.688, Florida Statutes, which permits juvenile pre-adjudication detainees to be housed separately in a facility that also houses adults. However, the Class allegations in the Amended Complaint clearly include juveniles charged as adults. To this end, Plaintiffs appear to be also attacking the constitutionality of Section 985.265, Florida Statutes, which authorizes juveniles charged with adult crimes to be housed separately in a facility that also detains adults.

pre-adjudicated juveniles to be detained in a facility that also separately houses adults automatically creates an unconstitutional confinement.

Because Plaintiffs' Verified Amended Complaint is actually a constitutional challenge to Chapter 985 and the confinement of juveniles as a matter of law in a facility that also separately houses adults, it should be dismissed for the reasons set forth below.

**A.    Sheriff Judd is Not the Proper Defendant to an Action Challenging the Constitutionality of the Statute**

A constitutional challenge to a state statute requires that notice of the challenge be given to the State Attorney General. *See* Fed. R. Civ. P. 5.1 & Fla. Stat. § 86.091. Thus, the State of Florida is the proper party to a constitutional challenge of a statute. *State ex rel. Shevin v. Kerwin*, 279 So. 2d 836, 838 (Fla. 1973) (explaining that the State is a proper party "to any determination of the constitutionality of any state statute"). Further, the State, "through the Attorney General, is a necessary party to any action in which the constitutionality of any general statute is raised, solely as to those papers, pleadings, or orders dealing directly with the constitutional issue." *Id.* In the instant case, Sheriff Judd is not a proper party to Plaintiffs' attack on the constitutionality of Chapter 985 and the State of Florida's authorization allowing juveniles and adults to be housed separately in the same location.

**B.    Plaintiffs' Constitutional Attack on Chapter 985 is Improperly Pled as a Claim under § 1983 and Must Be Brought as a Claim For Habeas Corpus**

Plaintiffs' apparent challenge to the constitutionality of Sections 985.265 and 985.688, Florida Statutes, is not a complaint regarding the conditions of their confinement, but rather the location of their confinement. Pursuant to the theme of the

Amended Complaint, there are apparently no precautions that could be instituted that would make it constitutional to house juveniles and adults separately in the same location. Plaintiffs imply that the only way their detention could pass constitutional muster is if they were detained in a location that did not also house adults – presumably in the custody of the Florida Department of Juvenile Justice.

A challenge to the fact or length of confinement may only be brought as a writ for habeas corpus. *See McKinnis v. Mosely*, 693 F.2d 1054, 1056 (11th Cir. 1982) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement.") (citations and quotation marks omitted). Challenging the location of one's confinement goes to the fact of confinement. *See United States ex rel. Murray v. Owens*, 341 F. Supp. 722, 723 (S.D. N.Y. 1972), *rev'd on other grounds*, 465 F.2d 289 (2d Cir. 1972) ("Habeas corpus is available not only to an applicant who claims he is entitled to be free of all restraints, but also to an applicant who protests that his confinement in a certain place vitiates the justification for confinement."); *Leahy v. Estelle*, 371 F. Supp. 951, 965 (N.D. Tex. 1974), *aff'd*, 503 F.2d 1401 (5th Cir. 1974) (stating that the plaintiff's challenge to his transfer from the custody of the State of Texas to the Texas Department of Corrections, where he was forced to perform the regular labor tasks of the other inmates and thus had limited time to perform legal research for his appeal, was "as close to the core of habeas corpus as an attack on his conviction for it goes directly to the constitutionality of his physical confinement by the Texas Department of Corrections prior to a final conviction") (citations and quotation marks omitted).

In contrast, a section 1983 action is proper if a state prisoner seeks prospective relief or damages. *See Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 638 (11th Cir. 1990). Plaintiffs purport to seek prospective relief in the instant case, but under any fair reading of the Verified Amended Complaint, Plaintiffs are actually seeking to stop juveniles – whether charged as adults or being held for no more than 21 days pending adjudication – from being securely detained in a location that also separately detains adults. Although necessary for a section 1983 claim, Plaintiffs never suggest that if the conditions of their confinement could be corrected within the confines of the Facility, the constitutional wrongs would be corrected without transfer to another location. *See Swansey v. Elrod*, 386 F. Supp. 1138, 1142 (N.D. Ill. 1975). The actual relief requested by Plaintiffs undermines their claim that they seek to redress the conditions of their confinement. Because Plaintiffs are challenging the location of their confinement – and thus the fact rather than the conditions of their confinement – their avenue of relief is to file a petition for writ of habeas corpus, which requires them to first exhaust their state remedies. *See Hickombottom v. McGuire*, 765 F. Supp. 950, 954 (N.D. Ill. 1991) ("[C]laims which are indirect attacks on a plaintiff's confinement . . . are better pressed in a habeas corpus proceeding.").[4]

## V. The Underlying Basis Alleged by Plaintiffs and the General Prayer for Declaratory and Injunctive Relief are Too Vague and Broad

Plaintiffs blithely request this Court "[d]eclare that the acts and omissions of Defendant violate the U.S. Constitution" and "[e]nter a preliminary and permanent injunction requiring the Defendant, his agents, employees and all persons acting in

---

[4] Were the Verified Amended Complaint better pled from an ultimate fact basis, the apparent challenges of Plaintiffs to the actions and decisions of the State of Florida, the Circuit Court, and the Board of County Commissioners would likely invoke issues of preclusion, abstention, or basic comity which very well might be dispositive.

concert with Defendant to cease their unconstitutional and unlawful practices." As argued above, other than the apparent intent of the Verified Amended Complaint to constitutionally challenge Chapter 985, Plaintiffs has interspersed throughout the Amended Complaint individualized allegations of harm to certain juveniles by certain employees of the SHERIFF. However, in order to sustain a Section 1983 action, Plaintiffs must allege ultimate facts showing an official policy that was the moving force of a constitutional violation. As this Court is well aware, the doctrine of *respondeat superior* does not apply in Section 1983 cases. *Monell v. Department of Social Services,* 436 U.S. 658 (1978). There must be an alleged official policy as a moving force of a constitutional violation. *Id.* at 694; *Jett v. Dallas Independent School District,* 491 U.S. 701 (1989). To establish the existence of a governmental custom for the purpose of holding a governmental entity liable under Section 1983, Plaintiffs must allege the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees, deliberate indifference to or tacit authorization of such conduct, and injury as a result of that custom or policy. *Thelma D. by and through Delores A. v. Board of Education of the City of St. Louis,* 934 F.2d 929 (8th Cir. 1991); *Simmons v. City of Philadelphia,* 947 F.2d 1042 (3d Cir. 1991). Plaintiffs have failed to allege ultimate facts to establish such a pattern, and the general prayer in essence to declare that the SHERIFF has violated the U.S. Constitution and should be enjoined from further violations fails to state a cause of action.

## VI. Plaintiffs Fail to State a Claim Based Upon the Eighth Amendment to the United States Constitution

Plaintiffs are pre-trial detainees. As such, their claims, to the extent they otherwise exist, would appropriately be for purported violations of the Fourteenth

Amendment to the United States Constitution. Although the applicable legal standard is the same or at least virtually the same, the constitutional underpenning for Plaintiffs' claims as pre-trial detainees is the due process clause of the Fourteenth Amendment. *Cottroell v. Caldwell,* 85 F.3d 1480 (11th Cir. 1996). In addition, the general claims in Plaintiffs relating to unnecessary or excessive force fail to factually allege that such force was inflicted wantonly upon Plaintiff, particularly when considered in light of the wide degree of deference recognized for Defendants in the jail context where necessary to preserve discipline and institutional security. *Whitley v. Albers,* 475 U.S. 312 (1986); *Brown v. Smith,* 813 F.2d 1187 (11th Cir. 1987). See also *Byrd v. Clarke,* 783 F.2d 1003 (11th Cir. 1986); and *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973)(factors to be considered include the need of force, the relationship between the need and the force applied, the extent of injury inflicted, and whether the force was applied in good faith to restore or maintain discipline, or maliciously and sadistically with the intent to cause harm).

Accordingly, Plaintiffs' Verified Amended Complaint against Defendants should be dismissed.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 11th day of April, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a

notice of electronic filing to TANIA GALLONI, ESQ. and MIRIAM HASKELL, ESQ., SOUTHERN POVERTY LAW CENTER, Post Office Box 370037, Miami, FL 33137.

                                                s/Hank B. Campbell
                                      HANK B. CAMPBELL
Florida Bar No. 434515
h.campbell@vcttalawyers.com
JONATHAN B. TROHN
Florida Bar No. 880558
j.trohn@vcttalawyers.com
ROBERT J. ARANDA
Florida Bar No. 988324
r.aranda@vcttalawyers.com
WILLIAM T. McKINLEY
Florida Bar No. 51115
b.mckinley@vcttalawyers.com
VALENTI CAMPBELL TROHN
 TAMAYO & ARANDA, P.A.
Post Office Box 2369
Lakeland, Florida 33806-2369
(863) 686-0043
(863) 616-1445 Fax
Attorneys for Defendants