UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHANDA HUGHES, et al.,

    Plaintiffs,

v.                                                           CASE NO.: 8:12-cv-568-T-23MAP

GRADY JUDD, et al.,

    Defendants.
_____/

**ORDER**

Through their guardians, seven juveniles detained at the Polk County jail sue Polk County Sheriff Grady Judd, Captain Kim Marcum, and Major Michael Allen in their official capacity. For themselves and on behalf of a putative class of juveniles ("the detainees"), the seven juveniles ("the named detainees") seek (through the guardians) to enjoin alleged abuse and neglect occurring in violation of the Eighth and the Fourteenth Amendments. Judd, Marcum, and Allen move (Doc. 25) to dismiss.

The amended complaint ("the complaint") (Doc. 3) states:

> In 2011, the Florida Legislature passed Senate Bill 2112 [], a law that [] authorize[s] Counties to house children facing juvenile charges in county jails rather than in the custody of the Florida Department of Juvenile Justice []. Polk County Officials made the decision to expand the number of children in Sheriff Judd's custody pursuant to this law.

> Polk County is the only county in Florida to have taken over the detention of pre-adjudicated juveniles under jail standards based on an adult correctional model rather than the [more] protective juvenile justice standards . . . . Today, all [juveniles] who are incarcerated [] pending the resolution of charges against them in Polk County, whether charged as juveniles or adults, are [] at the Polk County Jail.

The complaint includes an array of alleged grievances: The detainees at the Polk County jail are often unguarded. In consequence, some of the detainees freely intimidate, exploit, and injure others. Detainees suspected of contemplating suicide lack medical care. None of the detainees receives age-specific schooling or "necessary rehabilitative services" while waiting to appear in court. The guards taunt and swear at the detainees and use pepper spray excessively. The named detainees assert that the abuse constitutes a policy and creates liability under 42 U.S.C. § 1983. For a putative class of (more or less) each juvenile now or later incarcerated at Polk County jail, the named detainees seek a declaratory judgment that "the acts and omissions of Defendant [presumably Judd] violate the U.S. Constitution" as well as "a preliminary and permanent injunction requiring Defendant, his agents, employees and all persons acting in concert with Defendant to cease their unconstitutional and unlawful practices."

Judd argues for dismissal primarily on the ground that the named detainees "fail to conceal their actual agenda," which, Judd says, is to challenge the constitutionality of the law allowing Polk County to detain a juvenile at the Polk County jail. According to Judd, the named detainees object not to the conditions of

confinement but rather to the location of confinement that the new law permits. Judd claims that the named detainees must seek a writ of habeas corpus and sue the state of Florida.[*]

A few scattered lines in the complaint support Judd's theory. For instance, the complaint declares that public safety will suffer a "crisis" and Polk County's taxpayers might suffer "tremendous legal liability" unless the detainees are "removed from Sheriff Judd's custody." The named detainees respond, however, that the complaint describes and challenges particular conditions of confinement. These conditions, the named detainees contend, violate the law regardless of where they occur. At this stage each doubt resolves in the plaintiff's favor, and Judd's argument therefore fails.

Suing under Section 1983, the named detainees must allege "a policy or custom of deliberate indifference that le[ads] to the [constitutional] violation." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Judd argues that the complaint never establishes whether the alleged abuse constitutes an official policy or custom. Yet Judd concedes that the named detainees "ha[ve] interspersed throughout the [] complaint individualized allegations of harm." A typical example

---

[*] To support his argument Judd misquotes *State ex rel. Shevin v. Kerwin*, 279 So.2d 836 (1973), as saying Florida "is a necessary party" to a constitutional challenge of a Florida statute. *Kerwin* says that "the State is a proper, but not necessary, party." *See also Mallory v. Harkness*, 923 F.Supp. 1546, 1553 (S.D. Fla. 1996) (Ryskamp, J.), *aff'd*, 109 F.3d 771 (11th Cir. 1997) (table); *Fla. East Coast Ry. Corp. v. Martinez*, 761 F.Supp. 782, 784-85 (M.D. Fla. 1991) (Black, J.); 48A FLA. JUR. 2D STATE OF FLORIDA § 61 (2012).

states, "in January 2012, D.D., one of the incarcerated girls, witnessed guards pepper spray a mentally ill girl on suicide watch for sitting on a table instead of on her bed and refusing to move to her bed when told." With equal or greater (sometimes much greater) detail, the complaint alleges a dozen more sprayings, plus several other acts of potentially unlawful abuse, inflicted on a population of seventy or so detainees in a span of five months. Said another way, the named detainees allege a pattern – a custom – of allowing unlawful harm.

Absent an adjudication of guilt, a detainee suffers no 'punishment' – cruel, unusual, or otherwise. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Ingraham v. Wright*, 430 U.S. 651, 664-66 (1977). Judd next proposes that the complaint may not invoke the Eighth Amendment because no named detainee stands convicted of a crime. Actually, the complaint alleges that one named detainee awaits sentencing. That person, at least, might invoke the Eighth Amendment. The authority conflicts. *See Tilman v. Prator*, 368 F.3d 521, 523-24 (5th Cir. 2004); *Lewis v. Downey*, 581 F.3d 467, 473-74 (7th Cir. 2009). Under the sounder logic, "the critical juncture is conviction." *Resnik v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000). A pre-trial detainee is a suspected law-breaker; a sentenced prisoner is an adjudged law-breaker; a freshly convicted prisoner is more than halfway between the other two. The parties agree both that the "vast majority" of the detainees await trial and that the pertinent Eighth and Fourteenth Amendment standards differ little, if at all, *see City of Revere v. Mass. Gen.*

*Hosp.*, 463 U.S. 239, 244 (1983); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001), but for now the Eighth Amendment stays.

The state of Florida may charge a teenager accused of a serious crime such as murder or robbery as an adult. *Kirkland v. State*, 67 So.3d 1147 (Fla. 1st DCA 2011). Nothing in the complaint conveys which allegedly abused detainees are charged as an adult and which are charged as a juvenile. Although Judd wants to know how each detainee is charged, he never coherently explains why his not knowing should compel dismissal.

Finally, Judd contends that an action against him in his official capacity renders an action against Captain Marcum and Major Allen in their official capacity redundant. The complaint mentions Judd often, mentions Marcum or Allen rarely, and demands relief from only one defendant, apparently Judd. More to the point, "an official-capacity suit is, in all respects other than name , . . a suit against the entity [that the officer serves]. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (emphasis removed); *Cook v. Randolph Cnty., Ga.*, 573 F.3d 1143, 1149 (11th Cir. 2009). An action against Judd in his official capacity and an action against Marcum or Allen in their official capacity both function as an action against whomever Judd, Marcum, and Allen each serve.

Whom do they serve?  No record evidence reveals the correct entity.  Polk County seems the obvious answer.  Doubt remains nonetheless.  *Compare Gray v. Kohl*, 568 F.Supp.2d 1378, 1393 (S.D. Fla. 2008) (Moore, J.) ("a Florida county Sheriff [ordinarily] acts as an arm of the county"), *with Jones ex rel. Albert v. Lamberti*, 2008 WL 4070293, *2-*5 (S.D. Fla. 2008) (Cooke, J.) ("the county does not control the Sheriff with respect [to the operation of jails]; therefore, the county cannot be liable under [Section] 1983").  At any rate, Marcum and Allen serve Judd or serve under Judd.  Either way, only Judd needs to remain in the action.  *See Gray*, 568 F.Supp.2d at 1385 n.1; *Schubert v. City of Rye*, 775 F.Supp.2d 689, 699-700 (S.D.N.Y. 2011).

The named detainees argue that Marcum and Allen must remain because the amount of authority they hold "presents a question of fact" requiring discovery.  But in an "official-capacity" action Marcum and Allen's unlawful policy decisions, if any, create liability only for the entity Marcum and Allen serve.  *See Graham*, 473 U.S. at 167 & n.14; *Pino v. City of Miami*, 315 F.Supp.2d 1230, 1244-45 (S.D. Fla. 2004) (Altonaga, J.); *Engelleiter v. Brevard Cnty. Sheriff's Dept.*, 290 F.Supp.2d 1300, 1309 (M.D. Fla. 2003) (Glazebrook, J.); *see also Triplett v. Dist. of Columbia*, 108 F.3d 1450, 1453-54 (D.C. Cir. 1997).  Although the named detainees need to find an official who orders or allows the alleged abuse, Marcum and Allen need not wait through the search for that indispensable official.  They can go.

The motion (Doc. 25) is **GRANTED** in that the action against Marcum and against Allen is **DISMISSED**.  The motion is otherwise **DENIED**.

ORDERED in Tampa, Florida, on May 4, 2012.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE