## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |  |
|---|---|---|
| CHANDA HUGHES, as guardian and on behalf of J.B., a minor; BRENDA SHEFFIELD, as guardian and on behalf of J.D., a minor; VIOLENE JEAN-PIERRE, as guardian and on behalf of F.J.P., a minor; MICHELLE MINOR, as guardian and on behalf of J.P., a minor; LISA JOBE, as guardian and on behalf of K.J., a minor; AMY GAGE, as guardian and on behalf of B.G., a minor; CRYSTAL CUYLER, as guardian and on behalf of D.M., a minor; NIKEYTA MATTHEWS, as guardian and on behalf of K.G., a minor; and ANITA NAVA, as guardian and on behalf of A.H., a minor; on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |
|         Plaintiffs, | ) ) | Case No. 8:12-cv-00568-SDM-MAP |
| v. | ) ) ) |  |
| GRADY JUDD, Polk County Sheriff, in his official capacity, and CORIZON HEALTH, INC., | ) ) ) ) |  |
|         Defendants. | ) ) ) |  |

## SECOND AMENDED COMPLAINT[*] – INJUNCTIVE RELIEF SOUGHT

1.      This is a class action filed on behalf of the children imprisoned at the Central County Jail in Bartow, Florida ("Polk County Jail"), to protect them from abusive and unconstitutional conditions of confinement.  The vast majority of children incarcerated at the Polk County Jail have been accused of non-violent offenses.  They are held at the jail while they await their court dates.

---

[*] This Second Amended Complaint is a combination of the Verified Amended Complaint (DE 3) and proposed Supplemental Complaint (DE 34-1).  (See DE 51, DE 43.)

2.      Recently, as a cost savings measure, Polk County officials opted to cease housing all children in a designated juvenile detention center and transferred custody of these children to Sheriff Grady Judd.  In the Fall of 2011, Sheriff Judd moved all children in his custody to the Polk County Jail, which primarily houses adults.

3.      According to both the U.S. Centers for Disease Control and Prevention and the Office of Juvenile Justice and Delinquency Prevention, youth who are held in adult facilities are approximately 34 percent more likely than youth in juvenile facilities to be re-arrested for another crime.[1]  Ignoring the adverse public safety consequences of housing children in an adult jail, Sheriff Grady Judd trumpets the tax dollars he saves[2] by subjecting children to violence, abuse and violations of their fundamental constitutional rights.  Unfortunately, any short-term savings Polk County generates by housing children—some as young as eight years old—in the adult jail is offset by the tremendous cost borne by the children who languish in Sheriff Grady Judd's custody.

4.      Defendant Judd exposes the children incarcerated in the Polk County Jail to dangerous conditions.  Rather than provide engaged staff to supervise children, Defendant Judd relies on cameras and remote supervision, frequently leaving children unattended.  Defendant Judd's constitutionally deficient staffing policies and practices allow fights regularly to occur.

---

[1] Centers for Disease Control and Prevention, *Effects on Violence of Laws and Policies Facilitating the Transfer of Youth from the Juvenile to the Adult Justice System*: *A Report on Recommendations of the Task Force on Community Preventive Services*. MMWR 2007; 56 No. RR-9 (2007); Richard E. Redding, *Juvenile Transfer Laws: An Effective Deterrent to Delinquency?*, Washington, D.C.: U.S. Department of Justice, Office of Justice Programs, Office of Juvenile Justice and Delinquency Prevention (2010), https://www.ncjrs.gov/pdffiles1/ojjdp/220595.pdf.

[2] See Press Release, Polk County Sheriff's Office, *Polk County Sheriff's Office on pace to save between $1.6 to $2.4 million through operation of the PCSO Juvenile Detention Facility compared to Department of Juvenile Justice cost* (available at http://www.polksheriff.org/NewsRoom/News%20Releases/Pages/02-21-2012.aspx (last accessed March 20, 2012)).

As a result, youth live with a constant threat of violence.  Several youth have sustained injuries that have required medical attention.  When children are injured, Defendant Judd routinely fails even to notify their parents.   Because Defendant Judd refuses to protect children from harm, in order to protect themselves, some youth stay confined to a cell for 23 hours a day—deprived of regular human contact, educational services and recreation.

5.      When Sheriff Judd's employees decide to pay attention to the children in their custody, it is too often for the sole purpose of meting out abuse.  Polk County Jail guards employ a deliberately cruel use of chemical restraints (also known as mace or pepper spray).  Guards frequently spray children in the face with a substance that causes an excruciating burning sensation in the eyes and on the skin, and restricts the ability to breath.  Guards are known to subject children to this punishment for minor infractions such as singing, talking back or getting dressed too slowly.

6.      Polk County Jail staff frequently curse at the children in their care, including by using the racial slur "n*gger" and telling children that they do not give a f*ck about them.  Staff have referred to the girls housed at the Polk County Jail as "little b*tches."

7.      The United States Department of Justice has concluded that children housed in adult jails are 36 times more likely to commit suicide than children housed in a juvenile detention facility.[3]  Like many adult facilities that house children, the Polk County Jail responds to children who manifest an intent to harm themselves with cruelty and deliberate indifference.  Sheriff Grady Judd's employees force children who need suicide protections to strip naked in view of their peers and then wear a "suicide suit" a short, sleeveless garment that leaves

---

[3] McGowan, A., Hahn, R., et.al., *Effects on Violence and Laws and Policies Facilitating the Transfer of Juveniles from the Juvenile Justice System to the Adult Justice System: A Systematic Review*. 32 AMERICAN JOURNAL OF PREVENTATIVE MEDICINE, No.4 Supplement, 2007 at  S7-S28.

children's bodies exposed.  These children are then placed in the "cage"—a kennel-like structure that is empty with the exception of a hard, wooden bench.  These children are deprived of adequate mental health care and are prohibited from participating in education, recreation or from communicating with their families.

8.      In 2011, the Florida Legislature passed Senate Bill 2112 (SB 2112), a law that for the first time authorized Counties to house children facing juvenile charges in county jails rather than in the custody of the Florida Department of Juvenile Justice (DJJ).  Polk County Officials made the decision to expand the number of children in Sheriff Judd's custody pursuant to this law.

9.      Polk County is the only county in Florida to have taken over the detention of pre-adjudicated juveniles under jail standards based on an adult correctional model rather than the protective juvenile justice standards developed over the years by professionals with expertise working with children.

10.     Defendant Judd has boasted that his objective in incarcerating these children at the jail is to save the county large sums of money.  Defendant Judd's cost-cutting measures, however, have come at the expense of the children's safety and well-being.  Today, all children who are incarcerated while pending the resolution of charges against them in Polk County, whether charged as juveniles or adults, are jailed at the Polk County Jail.

11.     All children in Sheriff Grady Judd's custody are deprived of the education, individualized treatment and rehabilitative services that are reasonably calculated to help youth make positive life decisions once they are released from custody.  Unless children are protected from these abuses and removed from Sheriff Judd's custody, they will likely cycle in and out of

his facilities—creating a public safety crisis that exposes Polk County taxpayers to tremendous legal liability.

12.     Plaintiff minors K.J., B.G., D.M., J.B., J.D., F.J.P., J.P., K.G., and A.H., who are children presently or recently incarcerated at the Polk County Jail, seek injunctive and declaratory relief on behalf of themselves and all other similarly situated.

## JURISDICTION

13.     This action arises under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

## VENUE

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this district.  This Court is authorized to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## PARTIES

15.     Plaintiffs are children who are or were incarcerated at the Polk County Jail at the time of filing of this action and who are subject to conditions of confinement that violate their rights under the U.S. Constitution.

16.     Plaintiff K.J. is 15 years old. He is incarcerated at the Polk County Jail awaiting sentencing.

17.     Plaintiff B.G. is 17 years old. He is incarcerated at the Polk County Jail pending resolution of the charges against him.

18.     Plaintiff D.M. is 16 years old. He is incarcerated at the Polk County Jail pending resolution of the charges against him.

19.     Plaintiff J.D. is 17 years old. He is incarcerated at the Polk County Jail pending resolution of the charges against him.

20.     Plaintiff J.B. is 15 years old.  He was incarcerated at the Polk County Jail at the time this action was filed on an allegation that he had violated juvenile probation.

21.     Plaintiff F.J.P. is 17 years old.  He was incarcerated at the Polk County Jail for a juvenile probation violation at the time this action was filed.

22.     Plaintiff J.P. is 17 years old.  He is incarcerated at the Polk County Jail pending resolution of the charges against him.

23.     Plaintiff K.G. is 16 years old.  She is incarcerated at the Polk County Jail.

24.     Plaintiff A.H. is 17 years old.  He is incarcerated at the Polk County Jail.

25.     Defendant SHERIFF GRADY JUDD is the duly elected Sheriff of Polk County, Florida.   As Sheriff, Defendant Judd oversees law enforcement in the county.   Defendant is responsible for the administration and every day operation of the Polk County Jail.  Defendant is responsible for ensuring that the Polk County Jail operates in compliance with the laws of the State of Florida and the United States Constitution.  He is the final decision maker for the Polk County Jail.  Defendant Judd is sued in his official capacity.

26.     Defendant CORIZON HEALTH, INC. is a private provider of medical services in correctional settings.  The Polk County Sheriff's Office has contracted with Defendant Corizon Health to provide medical and mental health services to the people incarcerated at the Polk County Jail, including the roughly 70 children detained there at any one time whether charged as juveniles or adults.

## CLASS ACTION ALLEGATIONS

27.     The named Plaintiffs bring this suit on their own behalf and on behalf of all children who are, or will in the future be, incarcerated at the Polk County Jail.

28.     Plaintiffs seek to certify a class defined as:

All individuals who are under the age of 18, and all individuals who are under the jurisdiction of the juvenile court regardless of age, who are or who will in the future be incarcerated at the Polk County Jail.

29.     Plaintiffs seek to certify a subclass defined as:

All individuals under the sole jurisdiction of the juvenile court who are or who will in the future be incarcerated at the Polk County Jail.

30.     Plaintiffs seek to certify a second subclass defined as:

All individuals who are under the age of 18, and all individuals who are under the jurisdiction of the juvenile court regardless of age, who suffer from mental illness and who are or who will in the future by incarcerated at the Polk County Jail.

31.     This suit is properly maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2).

32.     The class is so numerous that joinder of all members is impractical.   Upon information and belief, Polk County Jail currently houses approximately 70 to 80 children, including approximately 30-40 children charged as juveniles.  Upon information and belief, Polk County Jail at any one time houses approximately 35 children who suffer from mental illness. Children are incarcerated at the jail for varying lengths of time, ranging from days to months, and the population changes on a daily basis.

33.     The class and subclasses also include future members whose names are not known, as the facility regularly admits new children who are members of the class.

34.     There are questions of law and fact common to all class members, including but not limited to whether conditions of confinement of children incarcerated at the Polk County Jail violate their rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

35.     Because the policies, practices and customs challenged in this complaint apply with equal force to the named Plaintiffs and the other members of the class, the claims of the named Plaintiffs are typical of the class in general.

36.     The named Plaintiffs will fairly and adequately represent the interests of the class. They possess a strong personal interest in the subject matter of the lawsuit and are represented by experienced counsel with expertise in class action prison conditions litigation in federal court. Counsel have the legal knowledge and resources to fairly and adequately represent the interests of all class members in this action.

37.     Defendant Judd has acted or refused to act on grounds generally applicable to the class: his policies, practices, acts and omissions have affected all class and subclass members. Accordingly, final injunctive and declaratory relief is appropriate to the class as a whole.

38.     Defendant Corizon Health has acted or refused to act on grounds generally applicable to the second subclass: its policies, practices, acts and omissions have affected all subclass members.   Accordingly, final injunctive and declaratory relief is appropriate to the subclass as a whole.

### STATEMENT OF FACTS

### BACKGROUND—THE POLK COUNTY JAIL

39.     The Polk County Jail was built nearly 30 years ago to house adults.  Its capacity has been expanded over the years to house up to 800 individuals.  Today, the vast majority of the jail's population continues to be adults.

40.    Upon information and belief, Polk County Jail currently houses approximately 70 to 80 children.  Although youth are kept in separate dorms, they are housed in a building that also houses adults.

41.    In August 2011, the Florida Sheriff's Association (FSA), of which Defendant Polk County Sheriff Grady Judd was and is an officer, adopted new standards governing the treatment of children held in jails.  These were modeled on the treatment of incarcerated adults and were adopted over the objection of child advocates.  Among other objectionable provisions, the FSA standards permit the use of chemical agents and tasers on children, something strictly prohibited by juvenile justice standards.

42.    In September 2011, Polk County Sheriff Grady Judd began housing children charged as adults at the Polk County Jail.  On or about October 1, 2011, Sheriff Judd transferred all pre-adjudicated juvenile detainees from the Department of Juvenile Justice detention facility to the Polk County Jail.  Since that time, Defendant Judd has incarcerated children as young as eight years old at the Polk County Jail pending resolution of juvenile charges against them.

## UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

### Failure to Provide Rehabilitative Services to Juveniles

43.    Florida's juvenile justice system is charged with administering a system of "prevention, early intervention, control, and rehabilitative treatment of delinquent behavior." Fla. Stat. § 985.601(1) (2011).  The express purpose of Florida's juvenile justice system is rehabilitation, not punishment.  For this reason, the State of Florida is not required to afford children with the full panoply of due process safeguards that are provided in adult criminal proceedings.  For example, there is no right to a jury trial for children in the juvenile justice system, nor do children have a right to bail.  Where, as in Florida, the purpose of detaining and

imprisoning children is treatment and rehabilitation, due process requires that the conditions and programs in facilities that house children must be reasonably related to that purpose.

44.     Although the Florida juvenile justice system is premised on providing rehabilitation to children charged with delinquency, Defendant Judd has publicly described these children as "incorrigible"— which means incapable of correction—and treats them punitively in accordance with that attitude .

45.     As described throughout this complaint, Defendant Judd has a policy and practice of subjecting children to punitive, adult correctional conditions in violation of the U.S. Constitution.

46.     Defendant Judd has a policy and practice of depriving children in his custody of developmentally appropriate interventions and rehabilitative services that the juvenile justice system is intended to provide.  Instead, Polk County Jail staff routinely treat children punitively, using violence, taunts, and threats.

47.     Polk County guards routinely use foul language with the children, saying things such as "shut the f*ck up" when a child complains, "f*ck you, I ain't giving you sh*t or "I don't give a flying f*ck what you need" when a child makes a request, and have even referred to African-American children as "n*ggers," and girls on the girls' unit as "little b*tches."

48.     Despite state and federal requirements to provide education, children are offered inadequate educational services.  Rather than provide an appropriate education, Defendant Judd lumps children of different ages and grades together in a makeshift classroom at the jail, without any regard to a child's individual learning needs.

49.     Children are often forced to eat in their cells, where their toilets are located. These toilets are rarely cleaned; to clean the toilet, the children must use the shower soap they receive for their personal hygiene.

50.     The children are sometimes deprived of outdoor recreation and, depending on the whim of the guards, may be confined to their living unit for days at a time.

51.     Despite the rehabilitative purpose for which these children are detained, Defendant Judd has a pattern and practice of denying them rehabilitative services, such as counseling, treatment, and developmentally appropriate activities that are reasonably related to the purpose of their detention.

### Failure to Protect from Harm

52.     Rather than provide engaged staff to supervise children, Defendant Judd relies on cameras and remote supervision, frequently leaving children unattended at the Polk County Jail.

53.     Defendant Judd implements a policy and practice of 1) failing to provide adequate staffing and staff training; and 2) failing to adequately supervise and protect children from harm.

54.     Defendant Judd fails to protect the youth from harm by refusing to provide appropriate supervision. As a result, children predictably fight among themselves—creating a substantial risk of serious harm to each other.  Defendant Judd allows these fights to occur and does nothing to prevent the conflict that is inevitable when multiple teenagers are confined in close quarters.  Staff do nothing to prevent these fights, but instead respond punitively once the fights are over by spraying dangerous chemical agents that cause burning, choking, difficulty breathing and vomiting.

55.     Rather than maintain a professional adult presence where children are housed, Polk County Jail guards monitor children through the use of remote cameras that capture only

parts of the jail.  As a result, children engage in fights that could have been avoided had the jail maintained an adult presence or adequate supervision of the areas where children are incarcerated.  Defendant Judd knows that these fights do, and will, occur as a result of inadequate training and staffing, yet disregards the substantial risk these failures pose to children's safety.

56.    Defendant Judd's pattern and practice of failing to provide adequate adult supervision and failing to protect youth from harm continues to endanger the lives and safety of all children detained at the jail.

57.    Since October 2011, Defendant Judd's failure to provide adequate training and supervision has resulted in numerous, preventable fights among children.  Defendant Judd knows that incarcerated children engage in "test of heart" fights to challenge newcomers, yet do nothing to prevent these fights from occurring.  Defendant Judd knows that older children may demand food trays from younger, more vulnerable children, who risk physical injury if they refuse.  This is known throughout the facility as "payroll." Despite the fact that this practice is widely known, Defendant Judd has failed to protect youth from victimization.

58.    As recently as March 1, 2012, the Sheriff's Office reported that three youths at the Polk County jail have been charged with attempted felony murder for the "test of heart" beating and torture of T.W., another youth incarcerated at the jail, over a period of several hours, despite guards' knowledge and duty to protect all youth at the jail and prevent such incidents from happening on their watch.[4]

---

[4]      Pleasant, Matthew, *Questions Surround Teen Jail Beating*, The Ledger (March 1, 2012) (available at  http://www.theledger.com/article/20120301/NEWS/120309935?p=2&tc=pg (last accessed March 20, 2012)).

59.     These incidents reflect Defendant Judd's systemic failure to implement the necessary training, staffing patterns and supervision in order to protect children from harm.

### Unlawful Use of Dangerous Chemical Restraints

60.     Defendant Judd promulgates a policy and practice of permitting Polk County Jail guards to carry dangerous chemical agents at all times on their person, including when guards are interacting with incarcerated children, creating the substantial risk of serious injury to children.

61.     Guards routinely use these dangerous chemical agents to punish children—not to maintain a secure environment or prevent harm.  Defendant Judd allows his employees to spray children with chemicals that cause an excruciating burning sensation and difficulty breathing as punishment for perceived minor rule violations, including for failing to follow orders that do not implicate facility security, and for engaging in behavior guards deem annoying like singing or not moving quickly enough to get dressed.

62.     When there are fights, guards indiscriminately spray children in the area with chemical agents—including children not involved in the fight, children who have stopped fighting, children who have already been disabled, and children the Sheriff's Office has described as the victim of the fight.

63.     Defendant Judd authorizes and permits guards' punitive use of chemical agents in these situations.  There is no security, rehabilitative or penological justification for Defendant Judd's use of chemical agents.

64.     Defendant Judd's policies and practices constitute a continuing threat of irreparable injury to the named Plaintiffs, and all children similarly situated.

65.     Defendant Judd has claimed publicly that the use of chemical agents against children at the Polk County Jail is "rare."  In fact, since October 2011, Sheriff's guards have used

pepper spray punitively against several children charged as juveniles, including S.R., A.M., M.C.1, M.C.2, D.J., D.G., J.D., , and Plaintiffs K.J. and J.P., and against several children charged as adults, including L.M., D.M., S.W., J.C., M.H., and Plaintiffs K.J. and B.G.

66.     In October 2011, for example, S.W. was among several children who were pepper sprayed following a fight, even though S.W. was not among those fighting.  After S.W. was disabled by the chemical agent, which made his eyes burn and took his breath away, he tried to crawl on the floor to the shower to wash it off, but a guard sprayed him again.

67.     In January 2012, guards pepper sprayed six children following a fight, including Plaintiff J.P., who the Sheriff's Office has described as the victim of the fight.

68.     In January 2012, D.D., one of the incarcerated girls, witnessed guards pepper spray a mentally ill girl on suicide watch for sitting on a table instead of on her bed and refusing to move to her bed when told, leaving her crying and screaming in pain.

69.     In March 2012, M.H. was pepper sprayed after manifesting an intent to hang himself by his sheet.

70.     Children at the jail, including B.G., J.D., D.G. and K.J., have been pepper sprayed simply for failing to follow an order such as to move from one area to another or to cease singing.

**Punitive Isolation and Suicide Prevention Policies**

71.     Defendant Judd has a policy and practice of subjecting children who are placed on suicide watch to punitive isolation, forced idleness and sensory deprivation, inflicting wanton and unnecessary discomfort, pain and humiliation.  Once children are placed on suicide watch, they are forced to strip naked in front of their peers and then wear a "suicide suit" which is a short, sleeveless garment that leaves children's bodies exposed.  Children placed on suicide

watch are then placed in the "cage"—a kennel-like structure that is empty with the exception of a hard, wooden bench.  Children are confined to this cage for 23 or 24 hours a day, denied physical exercise or recreation, and provided with limited opportunities to care for their personal hygiene needs.  Children receive little to no human interaction and are not allowed to receive mail, make phone calls, have visitation, or receive any of their property, including canteen food, pictures, eyeglasses, paper, or pens.

72.     These suicide prevention policies and practices are so cruel and abusive that staff have placed non-suicidal youth on "suicide watch" in order to inflict punishment on them. Indeed, the kennel-like cages are used both for children who have expressed suicidal ideation and for children who are alleged to have broken facility rules.

73.     Once a child is designated by a staff member as suicidal, he must remain in isolation until he is evaluated by a mental health professional who can determine whether the child remains a suicide risk. However, children who are on suicide watch do not receive any mental health services, treatment or interventions. Defendant Judd exhibits deliberate indifference to the serious mental health needs of the youth who are placed on suicide watch.

74.     Defendant Judd enforces isolation and suicide prevention policies that are not calculated to stop people from harming themselves, but instead inflict cruelty and assault the human dignity of children.

**Deliberate Indifference to Children with Mental Illness**

75.     According to national research, as many as 50 percent or more of children detained in the juvenile justice system suffer from a mental disorder.  Mental illness is similarly prevalent among children tried as adults.

76.     Children who suffer from mental illness are regularly among the population incarcerated at the Polk County Jail.

77.     Medical staff and guards at the Polk County Jail routinely delay or ignore the known medical needs of these children, demonstrating deliberate indifference to the children's mental health needs and putting them at unnecessary risk of substantial harm.

78.     Children with mental illness are routinely subjected to delays in receiving needed medication and treatment.  They are regularly not seen by a mental health professional in a timely manner, if at all.  Staff conduct grossly inadequate assessments.

79.     Medication, when provided, is frequently dispensed in a manner that is contraindicated, including by staff failing to provide the appropriate dosage, allowing medication to run out, failing to provide mechanisms to promptly make up for missed doses, and crushing or dissolving medications contrary to the product label.

80.     As children's brains are still developing, medical staff are aware that children are particularly vulnerable to harm from inappropriate variations in psychiatric medication, inappropriate dosage, withdrawal, and contraindicated provision of medication.

81.     Children with mental illness are also particularly at risk of harm in light of their limited ability to advocate for themselves.

82.     Defendants' constitutionally deficient response to children with mental illness places children detained at the Polk County Jail at particular risk of harm given the increased risk of suicide faced by children in adult jails.

83.     Defendants' actions and omissions constitute a systemic failure to provide constitutionally adequate mental health services to children.

84.     For example, D.D., a 14 year old girl who has been incarcerated at the Polk County Jail five times, has only irregularly been provided with needed medication on several occasions, despite a known history of serious mental illness.

85.     B.G.2,[5] a 17 year old boy presently incarcerated at the Polk County Jail, did not receive any mental health medication from the time he entered the jail in February 2012 until late April 2012, despite reporting to staff that he was prescribed the medication before entering the jail.

86.     C.D., a 14 year old boy presently incarcerated at the Polk County Jail who suffers from known mental illness is presently not receiving all necessary medications to treat his condition, despite advising staff that he needed them.

87.     J.N., a 16-year-old boy presently incarcerated at the Polk County Jail, has not received needed mental health treatment despite advising staff of his serious mental health needs. One guard at the Polk County Jail told J.N., "this is a jail, not a medical center."

88.     As a result of dangerously inadequate mental health treatment, children with mental illness who are detained at the Polk County Jail are at unreasonable risk of self-harm, acting out, suicidal ideation, and unnecessary pain and suffering.  These children are also at unnecessary risk of further deterioration of their psychiatric condition.

89.     Even though the vast majority of children with mental illness detained at the Polk County Jail are held pre-trial, Defendants subject them to punitive conditions of confinement, further exacerbating the symptoms of their mental illness.

90.     Defendants' policies and practices constitute deliberate indifference to children's mental health.

---

[5] This is to distinguish this child from named Plaintiff B.G.

**Plaintiffs' Statement of Facts: Illustrative Incidents of Abusive Treatment**

**Plaintiff B.G. – Inadequate Suicide Response, Prevention**

91.     On February 10, 2012, Plaintiff B.G. was placed in a "cage" for suicide watch after telling a nurse that he felt depressed.  When questioned by the nurse as to why he felt depressed, B.G. told her it was because he had been incarcerated for so long.  The nurse asked if he ever had suicidal thoughts.  B.G. responded that sometimes he thought about what life would be like if he were not present.  The nurse replied that she probably had no choice but to put B.G. on suicide watch, which meant moving him to the cage.  B.G. was not offered any mental health counseling or services.

92.     The cage is a box-like enclosure made with metal grates on all sides.  It is empty, except for a narrow hard bench against one side.

93.     While in the cage, which is visible to other youth, B.G. was made to strip naked and put on a suicide gown, known in the jail as a "turtle suit."  The experience was humiliating and degrading.

94.     B.G. was allowed nothing but a mat approximately one-inch thick.  To use the bathroom, he had to ask a guard for permission and be transported to another area of the facility. He was not allowed to keep his eyeglasses, which he wears all the time.

95.     B.G. remained in the cage until February 13, 2012.  During this entire time, no medical personnel met with him.  B.G. passed the time by singing to himself.  Until another youth was placed in a nearby cage, he was not able to have contact with other children other than brief conversations as they walked by where he was caged.  Guards brought his food to the cage and left it for him to eat alone.

**Plaintiff K.J. – Punitive Use of Suicide Watch**

96.     On February 12, 2012, Plaintiff K.J. was placed in a cage near B.G.'s cage, approximately 10 feet away, as punishment for engaging in horseplay.  As K.J. was not in the cage for suicide watch, he was allowed to bring the mat from his room.

97.     Upon being placed in the cage, K.J. began kicking the cage.  A guard responded by entering the cage and pushing K.J. against the wall, placing his arm against K.J.'s neck.

98.     Later in the evening, K.J. called out to B.G. in the other cage.  K.J. asked B.G. why he was on suicide watch.  Overhearing the conversation, the guard called out to K.J., jokingly asking him if he was suicidal, and stating that he must be, since he heard K.J. utter the word "suicide."  K.J. responded "no" many times, clearly stating he was not suicidal.

99.     Nevertheless, guards brought a second turtle suit and made K.J. change into it, requiring him to strip naked in front of the others.  The experience was humiliating and degrading.  The guards then moved K.J. into the "suicide" cage with B.G.

**Plaintiffs B.G. and K.J. – Punitive Use of Pepper Spray**

100.    The night of February 12, 2012, when all other children were in their cells, B.G. and K.J. were talking in the cage.  They began singing.

101.    The guards told B.G. and K.J. that they needed to stop singing and go to sleep. The boys, however, continued singing.

102.    One of the guards went into the control room and returned with a large can of chemical agent.  The guard placed the can on the desk nearby and sat down.

103.    The guard again told B.G. and K.J. to go to sleep.  They continued singing.

104.    The guard then walked over to the cage where Plaintiffs B.G. and K.J. were being held, with the large can of chemical agent in his hand.  He sprayed around all three sides of the

cage (the fourth being a wall), at the point where the cage meets the floor. Then he doubled back and sprayed the same area a second time.

105.    Plaintiff B.G. immediately felt pain in his eyes and on his skin from the burning of the chemical spray. Plaintiff K.J. immediately started choking, and felt his eyes and skin burn. Neither child could avoid or escape the chemical agent as they were trapped in the cage without even clothes with which to shield their faces. They tried to pull their turtle suits over their heads so they could breathe better. The bottoms of K.J.'s feet also burned because he had been forced to go barefoot in the cage. The chemical agent burned all over because his skin was exposed in the turtle suit. K.J. vomited from the chemicals.

106.    While the guard was spraying the cage, three other guards were nearby laughing. They did nothing to intervene.

107.    Plaintiffs B.G. and K.J. were left in that cage for at least 10 minutes suffering painful symptoms from the chemical agent, and were eventually moved to the other cage. Plaintiffs B.G. and K.J., however, were not given any opportunity to shower, no opportunity to wash their faces, no new turtle suit and no new blanket. In the second cage, B.G. and K.J. could still smell the pepper spray and continued to feel some of its effects. They remained in that cage until the next morning.

108.    Based on all of their experiences, Plaintiffs B.G. and K.J. continue to feel unsafe at the Polk County Jail and fear that they will continue to be similarly mistreated in the future.

**Plaintiff J.D. – Failure to Provide Rehabilitation, Punitive Use of Chemical Agent and Other Restraints**

109.    Plaintiff J.D. is 17 years old. He is a junior in high school. Plaintiff J.D. is not receiving, and has not received, the rehabilitative services to which he is entitled under federal

law while incarcerated at the Polk County Jail.  Instead, he spends his days enduring a punitive environment.

110.    On March 5, 2012, guards sprayed Plaintiff J.D. in the face with a chemical agent after they ordered him to get dressed for school more quickly.  After macing him, the guards forced him to the ground.  One of the guards twisted his arm behind him; another had his knee in J.D.'s back.  One guard stated, "We're going to break it [your arm], b*tch."  This occurred in view of most of the children on the unit, who were watching from either directly outside J.D.'s cell door or downstairs, where they had a clear view of the room.

111.    Plaintiff J.D. experienced burning in his eyes, in his mouth and on his skin as a result of being sprayed with the chemical agents.

112.    The guards forced J.D. down the stairs.  Once outside of the dorm area, they forced him to the ground again.  J.D. was crying.  J.D. was put in the cage for approximately 90 minutes.  He was not allowed to wash his face or shower during that time.  As a result, during this time he experienced extreme discomfort and pain.

113.    Following the incident, a guard warned the other children to behave, implying that if they failed to do so, they would suffer J.D's fate.

114.    J.D. was placed on lockdown for the rest of the day.  His lunch tray was put in front of his door, and a guard told him that he could eat it if he could access it through the locked door.  This was of course impossible, so J.D. went without lunch.  He was similarly denied access to his dinner tray.  During the entire day on lockdown, J.D. was only able to eat a snack that he was able to slide through the crack between the locked door and the floor.  He did not eat again until breakfast the next day.

115.    J.D. continues to feel unsafe and in fear that he will continue to be similarly mistreated in the future.

**Plaintiff D.M. – Punitive Use of Pepper Spray**

116.    On or about September 2011, Plaintiff D.M. was involved in a fight in his unit. Guards were just outside the dorm area where some children were fighting.  When the guards decided to respond, they ran into the dorm and ordered all the children onto the ground.  The children complied, and so were on the ground and no longer fighting.  Despite the fight being over, guards sprayed all of the youth in the dorm with chemical restraints, including children who were not involved in the fight.  Plaintiff D.M. was sprayed in the face.

117.    In January 2012, Plaintiff D.M. was walking on his unit as a guard was passing out mail and a nurse was delivering medication.  The guard said to D.M., "Do you hear me boy, talking to you?" and D.M. responded, "No." The guard pulled D.M. by the shirt, and D.M. asked the guard why he was shoving him.

118.    The guard shoved D.M. to the wall and sprayed him with a chemical agent.  He then banged D.M.'s head against the wall, which caused a bump to develop there.  D.M. was taken to the nurse, who asked him about the knot in his head.  D.M. reported that the guard had shoved him into the wall.  The guard said, "stop lying" and told the nurse that D.M. was banging his head against the window.

119.    D.M. continues to feel unsafe and in fear that he will continue to be similarly mistreated in the future.

**Plaintiff J.P. – Failure to Protect from Harm, Punitive Use of Chemical Agents**

120.     In January 2012, Plaintiff J.P. arrived at the Polk County Jail.  In his first week at the jail, he was subjected to a fight by a few other children in the day room on his unit.  The fight did not last long, and J.P. did not suffer any injuries.

121.     The fight ended when guards, who had been outside of the dorm area where the fight occurred, ran into the area.  By the time the guards arrived, the fight was over.

122.     Upon arrival, many of the children had already run to their room.  J.P. and another youth were still in the dorm area.  Guards arrived and immediately began spraying the children with chemical agents.

123.     J.P., whom the Sheriff's Office has described as the victim in the fight, was the first child to be sprayed with chemical agent.  While he was being sprayed, he yelled for the guards to stop because he could not breathe.  J.P. suffers from asthma.  His mother had previously notified Polk County Jail of his condition.

124.     After being sprayed in the face with the chemical agent, J.P. was thrown into the cage.  He was left there for at least 30 minutes before being allowed to wash his face.  As J.P. screamed for help from the cage, a guard taunted him with, "Oh, you want some more?"

125.     J.P. continues to feel unsafe and in fear that he will continue to be similarly mistreated in the future.

**Plaintiff J.B. – Failure to Provide Rehabilitative Services**

126.     Plaintiff J.B. is 15 years old.  He is in the eighth grade.  Plaintiff J.B. is not receiving, and has not received, the rehabilitative services his detention is supposed to provide as a child in the Florida juvenile justice system.  Additionally, J.B.'s education has been interrupted by his detention in the Polk County Jail, where he does not receive appropriate educational

23

services.   Staff have taunted J.B. with foul language and gestures and used hurtful and demeaning terms, including calling J.B. a "fat head."  They have placed him on lockdown in his cell for no apparent reason and have repeatedly threatened to do so on other occasions.

**Plaintiff F.J.P. – Failure to Provide Rehabilitative Services**

127.    Plaintiff F.J.P. is 17 years old.  He is a senior in high school.  He intends to pursue a college education.  Despite the fact that he was serving a juvenile sentence at the jail for a probation violation, he was not receiving, and did not receive, the rehabilitative services to which he was entitled under federal law.  Instead, he spent his days enduring a punitive environment where he witnessed staff pepper spray youth and was threatened with lockdown or isolation. Staff also used degrading language towards F.J.P. and foul language around him and other children.  Additionally, Plaintiff F.J.P.'s education was interrupted by his detention in the Polk County Jail, where he did not receive appropriate educational services.

**Plaintiff K.G. – Constitutionally Deficient Response to Mental Illness**

128.    Plaintiff K.G. is 16 years old.  She has been detained at the Polk County jail since March 28, 2012, and is charged as a juvenile.  This is the third time she has been detained at the Polk County Jail since October 2011.

129.    On or about April 10, 2012, K.G. witnessed the pepper spraying of another girl, A.S., on her unit after the girl was in an argument with a guard.  After A.S. was pepper sprayed, the other girls helped her get to the shower, and A.S. said that she wanted to kill herself.

130.    K.G. has been diagnosed with borderline personality traits, mood disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and oppositional defiance disorder.  She has been on medication to treat her mental illness since age 11.  K.G. also has a history of suicidal ideation.

131.    Defendants have been aware of K.G.'s mental illness since about October 2011, when K.G. was first incarcerated at the Polk County Jail and reported to medical staff that she required mental health medication.  Defendants were again made aware of K.G.'s mental illness in January 2012, during her second incarceration at the Polk County Jail, when K.G. reported to medical staff that she required four psychiatric medications for her illnesses.

132.    Despite Defendants' knowledge of K.G.'s serious mental health needs, Defendants failed to provide consistent treatment, delayed in providing medication, provided medication in a contraindicated manner, and otherwise subjected K.G. to unconstitutional conditions of confinement that only aggravate her condition.

133.    On or about March 28, 2012, K.G. again reported her mental health needs to medical staff, and in the presence of a jail guard.  On or about March 29, 2012, K.G. was placed on suicide watch or close observation; however she was never informed of the reasons and did not receive counseling or treatment while on suicide watch.  When medical staff came to remove her from suicide watch on or about March 30, 2012, K.G. again reported that she had not received her medication.  Although K.G. began receiving medication on or about March 31, 2012, the medication was crushed, despite medical contraindications warning against crushing the medication.

134.    As a result of Defendants' actions and omissions, K.G. has been subjected to unnecessary pain and suffering, including agitation, extreme drowsiness, and erratic behavior, and faces an unreasonable risk of substantial harm, including self-harm, suicidal ideation, and acting out against others.

135.    K.G. continues to feel unsafe as a result of Defendants' actions and omissions and believes that she will continue to be similarly mistreated in the future.

**Plaintiff A.H. – Constitutionally Deficient Response to Mental Illness**

136.    Plaintiff A.H. is 17 years old.  He has been detained at the Polk County jail since April 8, 2012, and is charged as a juvenile.

137.    On or about April 14, 2012, guards yelled at A.H. and other children for sitting on the floor.  Guards grabbed A.H. and bent his arms back, and placed him in isolation for 24 hours. A guard hit A.H. in the nose, causing his nose to drip blood.  The children in A.H.'s dorm, including A.H., have been subjected to regular threats of mace by guards.  He also witnessed another youth, J.L., being pepper sprayed after a fight, even though the children stopped fighting once the guards arrived.  Subsequently, A.H. asked the captain whether guards were allowed to pepper spray children for not doing what guards want them to, and she said "yes, if you don't respond to an order."  The captain added that pepper spray doesn't "leave bruises of break bones."

138.    A.H. has been diagnosed with mental illness for which he is prescribed psychiatric medication.  He has not received this receive necessary medication since he arrived at the Polk County Jail on April 8, 2012, despite having repeatedly notifying staff that he needs it, and despite his mother's attempts to advocate on his behalf.

139.    As a result of Defendants' actions and omissions, A.H. has been subjected to unnecessary pain and suffering, including auditory hallucinations, and faces an unreasonable risk of substantial harm, including self-harm, suicidal ideation, and acting out against others.

140.    A.H. continues to feel unsafe as a result of Defendants' actions and omissions and believes that he will continue to be similarly mistreated in the future.

## Lack of Training

141.    Although Defendant Judd boasts of the hundreds of hours of "training" his guards have, Polk County guards lack any meaningful training and experience in working with children. Defendant Judd does not require guards to have any training or experience in working with children in order to be hired as guards in the youth units.  As a result of Defendant Judd's actions and omissions, the named Plaintiffs and all those similarly situated, are being subjected to unconstitutional and unsafe conditions of confinement.

## EXHAUSTION

142.    Plaintiffs have exhausted all available administrative remedies.

## CAUSES OF ACTION

### Count 1

#### Eighth and Fourteenth Amendment Violation:
#### Failure to Provide Rehabilitative Services

143.    Defendant Judd's policies and practices of failing to provide Plaintiffs J.B., J.D., F.J.P., K.G., and A.H., and all those similarly situated, with rehabilitative services violate the Eighth and Fourteenth Amendments.

### Count 2

#### Eighth and Fourteenth Amendment Violation:
#### Dangerously Violent Conditions of Confinement

144.    Defendant Judd's policies and practices of failing to protect Plaintiffs K.J., B.G., D.M., J.P., J.B., J.D., F.J.P., K.G., and A.H., and all those similarly situated, from harm, and treating children with unlawful force and subjecting them to unreasonable restraints, create dangerously violent conditions of confinement in violation of the Eighth and Fourteenth Amendments.

**Count 3**

**Eighth and Fourteenth Amendment Violation:**
**Punitive Isolation and Deliberate Indifference**

145.     Defendant Judd's policies and practices of subjecting the Plaintiffs on suicide

watch and all those similarly situated to punitive isolation without penological justification and

Defendant Judd's deliberate indifference to the mental health needs of children who are placed

on suicide watch violate the Eighth and Fourteenth Amendments to the United States

Constitution.

**Count 4**

**Eighth and Fourteenth Amendment Violation:**
**Deliberate Indifference to Children's Mental Illness**

146.     Defendants' policies and practices of failing to provide K.G. and A.H., and all

others similarly situated, with necessary mental health treatment, and subjecting them to

punitive, harmful conditions of confinement, demonstrate a deliberate indifference to serious

medical needs, subjecting children to unnecessary pain and suffering and placing these children

at unnecessary risk of substantial harm violate the Eighth and Fourteenth Amendments to the

United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Honorable Court grant the following relief:

a.     Assume jurisdiction over this matter;

b.     Certify this matter as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2)

consisting of a class of all individuals who are under the age of 18, and all individuals

who are under the jurisdiction of the juvenile court regardless of age, who are or who will

in the future be incarcerated at the Polk County Jail; a subclass of all individuals under

the sole jurisdiction of the juvenile court who are or who will in the future be incarcerated at the Polk County Jail; and a subclass of all individuals who are under the age of 18, and all individuals who are under the jurisdiction of the juvenile court regardless of age, who suffer from mental illness and who are or who will in the future by incarcerated at the Polk County Jail;

c.      Declare that the acts and omissions of Defendants violate the U.S. Constitution;

d.      Enter a preliminary and permanent injunction requiring the Defendants, their agents, employees and all persons acting in concert with Defendants to cease their unconstitutional and unlawful practices;

e.      Award Plaintiffs reasonable costs and attorney's fees under 42 U.S.C. § 1988; and

f.      Grant Plaintiffs such other relief as this Court deems just.

Dated: May 18, 2012                    Respectfully submitted,

                                       By: /s/ Tania Galloni_____
                                       Tania Galloni
                                       Fla. Bar. No. 619221
                                       Miriam Haskell
                                       Fla. Bar. No. 69033
                                       SOUTHERN POVERTY LAW CENTER
                                       P.O. Box 370037
                                       Miami, FL 33137
                                       Tel: (786) 347-2056
                                       Fax: (786) 237-2949
                                       tania.galloni@splcenter.org
                                       miriam.haskell@splcenter.org

                                       Donald J. Hayden
                                       Fla. Bar. No. 097136
                                       Angela Vigil
                                       Fla. Bar No. 038627
                                       Joseph J. Mamounas
                                       Fla. Bar No. 041517
                                       BAKER & McKENZIE LLP
                                       Sabadell Financial Center
                                       1111 Brickell Avenue, Suite 1700

Miami, FL 33131
Tel: (305) 789-8900
Fax: (305) 789-8953
donald.hayden@bakermckenzie.com
angela.vigil@bakermckenzie.com
joseph.mamounas@bakermckenzie.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that, on May 18, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record identified in the attached service list and via transmission of Notices of Electronic Filing generated by CM/ECF.  I also certify that the foregoing document will be personally served on Defendant Corizon Health, Inc.

By: /s/ Tania Galloni
Tania Galloni

## SERVICE LIST

**Attorneys for Defendant Sheriff Grady Judd**
Hank B. Campbell (Florida Bar No. 434515)
Jonathan B. Trohn (Florida Bar No. 880558)
Robert J. Aranda (Florida Bar No. 988324)
William T. McKinley (Florida Bar No. 51115)
VALENTI CAMPBELL TROHN TAMAYO & ARANDA, P.A.
Post Office Box 2369
Lakeland, Florida 33806-2369
T:  (863) 686-0043
F:  (863) 616-1445 Fax
*h.campbell@vcttalawyers.com*
*j.trohn@vcttalawyers.com*
*r.aranda@vcttalawyers.com*
*b.mckinley@vcttalawyers.com*

**Defendant Corizon Health, Inc.**
Registered Agent
CT Corporation System
1200 S. Pine Island Road
Plantation, FL 33324