UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHANDA HUGHES, as guardian and on
behalf of J.B., a minor; BRENDA
SHEFFIELD, as guardian and on behalf of
J.D., a minor; VIOLENE JEAN-PIERRE,
as guardian and on behalf of F.J.P., a
minor; MICHELLE MINOR, as guardian and on
behalf of J.P., a minor; LISA JOBE, as
guardian and on behalf of K.J., a minor;
AMY  GAGE, as guardian and on behalf of
B.G., a minor; CRYSTAL CUYLER, as
guardian and on behalf of D.M., a minor;
NIKETA MATTHEWS, as guardian and on
behalf of K.G.; and ANITA NAVA, as
guardian and on behalf of A.H., a minor; on
behalf of themselves and all others similarly
situated,

Case No.: 8:12-cv-00568-SDM-MAP

**DISPOSITIVE MOTION**

      Plaintiffs,

vs.

GRADY JUDD, Polk County Sheriff, in
his official capacity, and CORIZON
HEALTH, INC.,

      Defendants.

_____/

## DEFENDANT, CORIZON HEALTH, INC.'S, MOTION TO DISMISS

**COMES NOW** the Defendant, CORIZON HEALTH, INC. (hereinafter referred to as

"Corizon"), by and through its undersigned attorneys, and respectfully states as follows:

**<u>INTRODUCTION</u>**

On or about May 18, 2012, Plaintiff minors – K.J., B.G., D.M., J.B., J.D.,[1] F.J.P.,[2] J.P., K.G., and A.H. – filed a four-count Second Amended Complaint, asserting a class action on behalf of themselves and all others similarly situated.  The Complaint is based in alleged violations of Plaintiffs' constitutional rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, and essentially arises out of Polk County's decision, pursuant to the authority granted by a law enacted in 2011 by the Florida Legislature (Senate Bill 2112), to house juvenile offenders, including Plaintiffs, in the Polk County Jail, under the supervision of Defendant, GRADY JUDD (hereinafter referred to as Sheriff Judd).

In the Second Amended Complaint, Plaintiffs have asserted claims against Sheriff Judd, as well as Corizon – a private healthcare provider that provides services to individuals incarcerated in the Polk County Jail.  Specifically, in Count 1 of the Second Amended Complaint, Plaintiffs J.B., J.D., F.J.P., K.G., and A.H. assert that Sheriff Judd violated the Eighth and Fourteenth Amendments by allegedly failing to provide them, and all those similarly situated, with rehabilitative services.  In Count 2, Plaintiffs K.J., B.G., D.M., J.P., J.D., F.J.P., K.G. and A.H. assert that Sheriff Judd violated the Eighth and Fourteenth Amendments by allegedly failing to protect them, and all those similarly situated, from harm, by treating children with unlawful force and subjecting them to unreasonable restraints, and by creating dangerously violent conditions.  In Count 3, Plaintiffs assert that Sheriff Judd violated the Eighth and Fourteenth Amendments by allegedly subjecting them, and all those

---

[1]  Upon information and belief, J.D. has reached the age of majority.
[2]  On June 14, 2012, Plaintiff F.J.P. filed a motion to substitute his name, to wit: Franky Jean-Pierre, for that of his guardian stating that he has reached the age of majority and is no longer required to be represented by a guardian or a next friend.  This Court has granted his motion for substitution.

similarly situated, to punitive isolation and by having deliberate indifference to children on suicide watch.

Lastly, and relevant to Corizon, in Count 4, Plaintiffs K.G. and A.H. assert that "Defendants" violated the Eighth and Fourteenth Amendments by allegedly failing to provide them, and all others similarly situated, with necessary mental health treatment, by subjecting them to punitive, harmful conditions of confinement, by demonstrating a deliberate indifference to serious medical needs, by subjecting them to unnecessary pain and suffering, and by placing them at an unnecessary risk of substantial harm. Notably, on June 13, 2012, A.H. filed a Notice of Voluntary Dismissal, and therefore, is no longer a party to this action. (See Doc. #65.) Accordingly, it appears that K.G. is the only representative Plaintiff who is asserting a claim for constitutional violations against this Defendant on her own behalf, and on behalf of all others similarly situated.

As a result of the alleged constitutional violations, K.G. requests that this Court: assume jurisdiction over this matter; certify a subclass under Federal Rule of Civil Procedure 23; declare the actions of Corizon in violation of the U.S. Constitution; enter preliminary and permanent injunctive relief; and award K.G., and all others similarly situated, with reasonable costs and attorneys fees. K.G., however, and all others allegedly similarly situated, are not entitled to such relief as against this Defendant. First and foremost, K.G. has failed to exhaust all available administrative remedies, and therefore, this Court lacks jurisdiction over this action. Notwithstanding her failure to exhaust administrative remedies, and without waiving such a requirement or submitting to the jurisdiction of this Court, Corizon further asserts that K.G. has failed to meet the requirements under Federal Rule of

Civil Procedure 23 in order to certify a class, and pursue the substantive claim against Corizon on behalf of all others similarly situated.  Additionally, with respect to the claim, itself, K.G. has failed to state a valid claim for relief against Corizon.  Additionally, she has failed to demonstrate that she is entitled to any form of injunctive relief.  Accordingly, the Second Amended Complaint should be dismissed as against Corizon.

## STANDARD ON A MOTION TO DISMISS

Under the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), a plaintiff is required to make a "'showing,' rather than a blanket assertion, of entitlement to relief."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007).  That is, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Id. (explaining that "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it'").  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  Id. at 558.

Federal Rule of Civil Procedure 12(b) presents several grounds upon which a complaint should be dismissed, including where the court lacks subject matter jurisdiction or where the plaintiff has failed to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(1), (6).  A motion to dismiss under Rule 12(b)(6) admits the well-pled allegations of the complaint, but denies their legal sufficiency.  "[T]he tenet that a court must accept as true all

4

of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Only a complaint that states a plausible claim for relief survives a motion to dismiss. See id.  In reviewing a motion to dismiss, the court "need only accept 'well-pleaded facts' and 'reasonable inferences drawn from those facts.'" Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).

While the standard of construction with respect to reviewing a denial of a motion to dismiss is liberal, it does not impose upon the court the duty to rewrite the complaint for the plaintiff, or to assume facts not contained within the complaint.  See Peterson v. Atlanta Housing Auth., 998 F.2d 904, 912 n.17 (11th Cir. 1993) (explaining that even if the record demonstrates that a factual basis exists, a plaintiff is still required to "plead those facts in order to survive a motion to dismiss.").  In other words, the complaint must allege the relevant facts with some specificity. See Gonzalez, 325 F.3d at 1235.  "[M]ore than mere conclusory notice pleading is required . . . .  [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Id.  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." Id.

## ARGUMENT

As noted, in the instant case, Plaintiff K.G., individually, and on behalf of all others similarly situated, has attempted to assert a claim against Corizon for alleged violations of the Eighth and Fourteenth Amendments to the U.S. Constitution.

**I.    Plaintiffs have failed to exhaust Administrative Remedies**

First and foremost, this Court does not have jurisdiction over this action due to the fact that Plaintiffs have failed to exhaust all available administrative remedies.  The Prison Litigation Reform Act (PLRA) provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see also Bryant v. Rich, 530 F.3d 1368, 1372 (11th Cir. 2008).

The rationale for requiring exhaustion of administrative remedies is clear.  "In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation."  Bryant, 530 F.3d at 1375.  "And, for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy."  Id.  Accordingly, exhaustion should be decided on a Rule 12(b) motion to dismiss.  See id.

The Middle District has specifically noted that:

> [t]he PLRA's exhaustion requirement is intended to: (1) 'eliminate unwarranted federal-court interference with the administration of prisons,' (2) 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,' and (3) 'reduce the quantity and improve the quality of prisoner suits.' As a result of the PLRA, consideration of '[e]xhaustion is no longer left to the discretion of the district court, but is mandatory.'

Bentley v. White, 2009 WL 248242, 2 (M.D. Fla. 2009) (citing Woodford v. Ngo, 548 U.S. 81 (2006)).

In the instant case, other than a conclusory statement, the Second Amended Complaint fails to demonstrate how K.G. has properly exhausted the administrative remedies

available to her, and all others similarly situated. There are absolutely no allegations demonstrating what steps have been taken, if any, to exhaust said remedies. Accordingly, this Court should dismiss the Second Amended Complaint, and require that K.G., and all others similarly situated, exhaust all administrative remedies prior to instituting this action or amend their Complaint to demonstrate clearly that Plaintiffs have exhausted their administrative remedies.

**II.   Plaintiffs have Failed to Satisfy Federal Rule of Civil Procedure 23 Requirements for Certifying a Class**

      **A.   Standard on Class Certification under Rule 23**

Notwithstanding the foregoing, and without waiving Corizon's objection to K.G.'s failure to exhaust administrative remedies, this Court should dismiss the Second Amended Complaint as against Corizon on the basis that K.G. has failed to satisfy the class certification requirements of Federal Rule of Civil Procedure 23, and therefore, cannot pursue a claim against Corizon on behalf of all others similarly situated.

Under Federal law, to obtain class certification, a named plaintiff must (1) have standing, (2) satisfy each requirement of Federal Rule of Civil Procedure 23(a), and (3) satisfy at least one of the requirements of Federal Rule of Civil Procedure 23(b). See Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009); Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003). The plaintiff bears the burden of establishing that every element of Rule 23 has been satisfied and that class certification is appropriate. See Vega, 564 F.3d at 1267. Additionally, the court, itself, has a duty to conduct a "rigorous analysis" of the Rule 23 requirements, and the court's decision must find

support in the evidence before it.   See id.; Sacred Hearts Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1169 (11th Cir. 2010).

     As part of the court's analysis, and even though only at a motion to dismiss stage, the court must go beyond the pleadings to make a meaningful determination of the certification issue, which includes gaining an understanding of the claims, defenses, relevant facts, and applicable substantive law.  Vega, 564 F.3d at 1267.  Thus, "[a]lthough the trial court should not *determine* the merits of the plaintiffs' claim at the class certification stage, the trial court can and should *consider* the merits of the case to the degree necessary to determine whether the requirements of Rule 23 [are] satisfied."  Vega, 564 F.3d at 1266 (citing Valley Drug, 350 F.3d at 1188 n. 15; Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 n.12 (1978); Huff v. N.D. Cass Co. of Ala., 485 F.2d 710, 714 (5th Cir.1973); Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996) ("Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.").

     With respect to the requirements, themselves, Rule 23(a) provides that:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> > (2) there are questions of law or fact common to the class;
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> > (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Babineau v. Fed. Express Corp., 576 F.3d 1183, 1189-90 (11th Cir. 2009).  Additionally, a plaintiff must satisfy one of the elements under Rule 23(b).  In

the instant case, Plaintiffs have asserted that this suit is properly maintainable under subsection (b)(2).  Subsection (b)(2) provides that:

> **(b) Types of Class Actions.**  A class action may be maintained if Rule 23(a) is satisfied and if . . .
>
>> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . .

See Fed. R. Civ. P. 23(b)(2).

Rule 23 requirements must be analyzed by the court and satisfied by the plaintiff with respect to the specific class that the plaintiff seeks to certify.  In the instant case, for the claim K.G. has asserted against Corizon, K.G. attempts to certify the class as follows:

> All individuals who are under the age of 18, and all individuals who are under the jurisdiction of the juvenile court regardless of age, who suffer from mental illness and who are or who will in the future by [*sic*] incarcerated at the Polk County Jail.

K.G., as the putative representative Plaintiff of that class, however, has failed to establish all elements of Rule 23(a), as well as the Rule 23(b)(2) element, and therefore, this Court should deny the certification.

### B.        Plaintiff K.G. has Failed to Establish the Requirements of Rule 23(a)

As noted, Rule 23 requires that a plaintiff satisfy all elements under subsection (a) – numerosity, commonality, technicality and adequacy of representation – in order to certify a class.  Babineau, 576 F.3d at 1189-90.

### i.        Rule23(a)(1) – Numerosity

While no fixed numerosity rule exists, courts general hold that "one may say that less than twenty-one is inadequate [for a finding of numerosity], more than forty is adequate, and

9

numbers falling in between are open to judgment based on other factors." See Vega, 564 F.3d at 1266-67 (citing Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)); see, e.g., Hodge v. McLean Trucking Co., 607 F.2d 1118, 1121 (5th Cir. 1979)[3] (holding that a class of four persons "does not satisfy requirement of numerosity or impracticability of joinder required by Rule 23."); Crawford v. W. Elec. Co., 614 F.2d 1300, 1305 (5th Cir. 1980) (finding that class of 34 does not satisfy numerosity requirement as a matter of law, and that in light of all other circumstances, trial court did not abuse its discretion in denying class certification).

In Vega, the Eleventh Circuit found that the district court abused its discretion in certifying a class involving retail sales associates employed by T-Mobile. See 564 F.3d at 1267. The Vega court agreed that deposition testimony established that the *nationwide* number was "in the thousands," which "would constitute a sufficient basis for a finding of numerosity as it relates to a nationwide class," but which did not constitute a sufficient basis for a finding of numerosity as it relates to a *Florida-only* class. See id. The court noted that a precise number is not necessarily required to satisfy the numerosity requirement, but "mere allegations of numerosity are insufficient to meet [the] prerequisite." See id. (citing Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983)). In fact, a plaintiff absolutely "bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." See id.

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981)(en banc) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The <u>Vega</u> court found that the plaintiff had not produced "any evidence whatsoever (or even an allegation) of the number of retail sales associates T-Mobile employed during the class period *in Florida* who would comprise the membership of the class," and therefore held that the district court abused its discretion in finding that the numerosity requirement existed as to the Florida-only class.  <u>See id.</u> (explaining that even allegations that defendant had over 5000 associates and a 1000 stores was insufficient due to the fact that the time frame was unclear).  The court specifically noted that such a finding "without the aid of a shred of Florida-only evidence was an exercise in sheer speculation."  <u>See id.</u> at 1267-68  (finding that record was "utterly devoid of any showing that the certified class of T-Mobile sales representatives 'in Florida' [was] 'so numerous that joinder of all members is impracticable.'")

In the instant case, the class K.G. attempts to certify against Corizon is specifically defined and limited to juveniles who suffer from mental illness and who are or will be incarcerated at the Polk County Jail.  The mental illness aspect to the class is key due to the fact that K.G. has asserted a claim for constitutional violations against Corizon related to Corizon's alleged deliberate indifference to children's mental illness.  Notably, K.G. has failed to satisfy the numerosity requirement of Rule 23(a), and therefore, cannot certify the specified class or pursue the claim against Corizon on behalf of all others similarly situated.

K.G. has failed to make any showing or produce any evidence that the certified class meets the numerosity requirement.  <u>See Vega</u>, 564 F.3d at 1267.  K.G. has simply claimed that, *upon information and belief*, approximately 35 children, out of the alleged 70-80 children housed at the Polk County Jail, suffer from mental illness.  K.G. has failed to

11

provide any support for her beliefs that 70-80 children are housed in the Polk County Jail at any given time, or that 35 children in the Polk County Jail routinely suffer from mental illness. Her claim that approximately 35 children suffer from mental illness appears to derive from unspecified and undisclosed "national research" that has allegedly found that "as many as 50 percent or more of children detained in the juvenile justice system suffer from a mental disorder." *National-based data* simply will not support a claim that a certain and sufficient number of children, that are specifically housed *in the Polk County Jail*, suffer from mental illness. See id. (explaining that even if 5000 associates and 1000 stores existed nationally, this was insufficient to support a claim that the associates in this state were numerous enough to support the Rule 23(a) requirement). Such analysis is purely speculative, and will not satisfy the numerosity requirement. See id. at 1267-68.

K.G. only identifies and describes four putative class members – D.D., B.G.2, C.D., and J.N. – who suffer from mental illness. One would think that if the class was so numerous, or even approached the number 35 alleged by Plaintiff K.G., K.G. would have cited or referenced more than these four putative class members. Information regarding these four individuals does not support K.G.'s claim that approximately 35 children suffer mental illness, and K.G. has failed to demonstrate why the joinder of these four individuals is impracticable. In fact, courts generally hold that a class consisting of less than twenty-one is inadequate to satisfy the numerosity requirement. See Vega, 564 F.3d at 1266-67; Hodge, 607 F.2d at 1121 (5th Cir. 1979). K.G.'s failure to satisfy the numerosity requirement alone requires a denial of the class certification. See Fed. R. Civ. P. 23(a).

ii.   **Rule23(a)(2) – Commonality**

The second requirement of Rule 23(a) – the commonality requirement – demands that there be questions of law or fact common to the class.  See Fed. R. Civ. P. 23(a).  Under the commonality requirement, "a class action must involve issues that are susceptible to class-wide proof."  Vega, 564 F.3d at 1270 (citing Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001)).  In making the commonality determination, the court needs to identify the common questions of law or fact with "analytical rigor and precision."  See id. at 1269.

The Vega court, although dealing with an issue of predominance that does not exist in the instant case, provided a thorough overview of the very type of analysis required in making a commonality determination.  See id. at 1269-75.  To be specific, the Vega court explained that in making the determination of whether common questions of law or fact exist, a court must look to the specific substantive claims asserted.  See id.   In Vega, the plaintiff, on behalf of the putative class and himself, asserted two claims: an "unpaid wages" claim and an unjust enrichment claim.  See id. at 1270.  The Vega court found that under Florida law, an "unpaid wages" claim does not exist, and that, at the most, it could have been a breach of contract claim, if properly asserted.  See id.  The court found that even if the breach of contract claim was properly asserted, commonality did not exist with respect to the elements of the breach of contract claim as applied to the individual members of the class.  See id. at 1272.  That is, there were no allegations of a common contract between the class members, and therefore, identical evidence on behalf of each member could not be used to prove the elements of "offer, acceptance, consideration, or the essential terms."  See id.  Rather, the elements of each class member's breach of contract claim:

> depend[ed] on such individualized facts and circumstances as when a given
> employee was hired, what the employee was told (and agreed to) with respect to
> compensation rules and procedures at the time of hiring, the employee's
> subjective understanding of how he would be compensated and the
> circumstances under which his compensation might be subject to charge backs,
> and when and how any pertinent part of the employee's compensation
> agreement or understanding thereof may have changed during the course of that
> employee's tenure at T-Mobile.

Id.  Without a common contract, the Vega court explained,

> there can also be no commonality with respect to whether T-Mobile's conduct
> relating to commission charge backs, *even if undertaken pursuant to a uniform
> policy*, constituted a breach of every class member's particular employment
> contract, whether any such breach was material for every class member, or
> whether each class member suffered cognizable damages as a result.

Id. at 1272-73 (emphasis added).  Likewise, the Vega court found that the plaintiff's unjust

enrichment claim also lacked commonality due to the court's need to "examine the particular

circumstances of an individual case" to determine whether inequity exists.  See id. at 1274-75

(explaining that there was no evidence that the defendant accepted a common benefit from each

putative class member, and a determination would need to be made on what each employee

knew and understood because those that knew of and understood the defendant's policies would

not have a claim).

　　　　In the instant case, as noted, K.G. has pled a claim for alleged violations of the Eighth

and Fourteenth Amendments on the basis of alleged deliberate indifference to children with

mental illness.  It is well-settled that deliberate indifference requires that a defendant

deliberately disregard a strong likelihood, rather than a mere possibility, that harm will occur.

Gish v. Thomas, 516 F.3d 952, 956 (11th Cir. 2008).  The Eleventh Circuit has held that, in

order to prove that a governmental actor acted with deliberate indifference, a plaintiff must

show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3)

14

conduct that is more than mere negligence.  See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009).

The Supreme Court has cautioned that not every allegation of inadequate medical treatment states a constitutional violation.  See id.  In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be "repugnant to the conscience of mankind."  Id.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  Id.  It is only such indifference that can offend "evolving standards of decency."  Id.

In the instant case, in an effort to demonstrate Corizon's alleged deliberate indifference to children with mental illness, K.G. has pled a series of factual allegations in support thereof.  These allegations include that Corizon allegedly routinely delays provision of medications or medical treatment, ignores the known medical needs of the children, conducts grossly inadequate assessments, and provides medication in a manner that is contraindicated, including failing to provide appropriate doses, allowing medications to run out, and crushing or dissolving medications.  Additionally, as noted, K.G. identifies four individuals housed in the Polk County Jail that suffer from "mental illness," without specifying the nature of those mental illnesses, and further describes the different actions by Corizon that allegedly amount to deliberate indifference with respect to these individuals.

Ultimately, however, the types of mental illnesses that exist vary drastically, and may differ from one another based on their symptoms or severity, or even based on the nature or circumstances of the afflicted individual or the appropriate treatment for each such mental

illness. K.G. has simply certified the class as those suffering from mental illness, but has failed to specify what types of mental illness each putative class member suffers from. Regardless, a claim for deliberate indifference with respect to the mental illnesses suffered by each putative class member would require and depend upon the proof of individualized facts and circumstances. For example, a delay in medication with respect to one putative class member, after taking into account that specific class member's mental illness and all circumstances and factors surrounding that mental illness, may not amount to a deliberate disregard of a strong likelihood that harm will occur to that specific class member – but may amount to such a finding with respect to another less stable class member. Additionally, the specific types of medical treatment and/or medications, considered in light of the specific circumstances or nature of the putative class member's mental illness, will also drastically affect any findings of deliberate indifference. As an example, delay in the provision of medications to a putative class member who was non-compliant with his or her mental health medications prior to coming to jail might result from the medically necessary need for such juvenile inmate to be evaluated by a psychiatrist prior to being prescribed and administrated mental health medications.

Accordingly, common questions of law or fact among the putative class simply do not exist, and individualized evidence will be required in order to prove each class member's claim. K.G.'s attempt to lump all putative members in one class together with varying types of mental illness does not meet the commonality requirement of Rule 23(a). This attempted class certification is different from a class such as all members who took a particular drug that caused an adverse medical reaction such as stroke, heart attack or birth defect. Unlike

the instant action, such a class might meet the commonality requirement.  Therefore, K.G. has simply failed to satisfy the commonality requirement, which alone requires a denial of the class certification.  See Fed. R. Civ. P. 23(a).

### iii.      Rule 23(a)(3) – Typicality

The third requirement to Rule 23(a) mandates that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  See Fed. R. Civ. P. 23(a)(3).  That is, the typicality requirement "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." Vega, 564 F.3d at 1275 (citing Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1322 (11th Cir. 2008); Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001)) (explaining that typicality and commonality are related, but "commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class."  In the Vega case, the court found that the plaintiff failed to establish the typicality requirement for many of the same reasons that the plaintiff failed to establish the commonality requirement.  See Vega, 564 F.3d at 1276.  That is, the Vega court found that the representative plaintiff's claim was not typical of the class members' claims because each claim depended on individualized terms, conditions, mutual understandings, and factual circumstances.  See id. Additionally, the class members differed based on their sales commissions, job title, and position, and even if a common contract existed, different terms and conditions would apply to the representative plaintiff and the different class members, and therefore the representative plaintiff's claims could not be typical of the other class members, "all of whom were subject to divergent compensation rules and procedures and may have received different information

17

about the [defendant's] policies." <u>See id.</u> at 1276-77.

Likewise, in the instant case, K.G.'s claim does not share typicality with the putative class members. Once again, the mental illnesses suffered by each individual are likely drastically different, and even if two class members suffer from the same mental illness, the nature and circumstances of how the illness affects them will differ, as well as the type of treatments and medications they require. Proof of K.G.'s claim and proof of the class members' claims that Corizon acted with deliberate indifference will require individualized facts and circumstances. Accordingly, K.G. has failed to satisfy the typicality requirement, which alone requires a denial of class certification. <u>See</u> Fed. R. Civ. P. 23(a).

### iv.   <u>Rule 23(a)(4) – Adequacy of Representation</u>

Lastly, the fourth requirement under Rule 23(a) mandates that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). K.G., who likely suffers from entirely different mental illnesses, a different combination of mental illnesses, or a different severity in mental illnesses from the putative class members, who all likely require drastically different treatment and medication plans, has failed to demonstrate that she is an adequate representative of the class. <u>See</u> <u>Crawford</u>, 614 F.2d at 1304 (explaining that the fact that "plaintiffs are members of the same race as the other employees and rejected job applicants whom they seek to represent in a class action is not enough in itself to require a finding under Rule 23 that their representation was adequate"). In the Second Amended Complaint, K.G. has not alleged adequate information to establish that she is an adequate representative for the class. Accordingly, based on K.G.'s failure to satisfy the adequacy of representation element alone, a denial of the class certification is required.

18

### C.     <u>Plaintiff K.G. has Failed to Establish the Requirement of Rule 23(b)(2)</u>

As previously stated, the failure to satisfy any of the four Rule 23(a) requirements precludes class certification. <u>See</u> <u>Babineau</u>, 576 F.3d at 1189-90. For the reasons expressed above, each of the Rule 23(a) requirements have not been met. Additionally, even if, for purposes of argument, those requirements have been satisfied, K.G. has failed to satisfy an element of Rule 23(b), or in this case, Rule 23(b)(2).

To be specific, Rule 23's Advisory Committee's commentary states that subdivision (b)(2) is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Pursuant to the allegations asserted in the Second Amended Complaint, even if taken in the light most favorable to K.G., it is evident that Corizon has <u>not</u> taken action or refused to take action as part of its alleged deliberate indifference for children's mental health. That is, K.G. has specifically indicated that she and putative class members have received medical treatment and medications from Corizon at the Polk County Jail. Thus, the nature of K.G.'s claim is not necessarily a specific action or refusal to act on the part of Corizon; rather, K.G's claim relates to the *manner* in which Corizon has acted in providing the treatment and medications that K.G. seeks on behalf of herself and putative class members.

The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a civil action prosecuting his or her rights. <u>Sacred Hearth</u>, 601 F.3d at 1184. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth

someone's (usually an attorney's) labor.  Id.  In the instant case the certification of a class action is not a superior available method for fairly and efficiently adjudicating K.G.'s claim.  K.G., and each of the putative class members (which there only appears to be four), have the ability to pursue their constitutional claims under § 1983 against Corizon without the need for a class certification.  Should these individuals prevail in their § 1983 claims, they would be entitled to reasonable attorney's fees and costs.  To the extent their § 1983 claim does not rise to the level of a constitutional violation, or in addition to that claim, they can also pursue claims under a negligence theory.  Most notably, this Court has continuing power under Rule 23, and its certification decision "is not irreversible and may be altered or amended at a later date."  Crawford, 614 F.2d at 1304.  Accordingly, even though K.G. has failed to satisfy the Rule 23 requirements at this time, this Court can revisit this issue at a later date should K.G. develop sufficient evidence to demonstrate that she is entitled to class certification.

III.    **Plaintiff K.G. has Failed to State a Valid Claim for Relief Against this Defendant**

As noted, Plaintiff K.G. has attempted to bring Corizon into the instant case under Count 4 of the Second Amended Complaint for the alleged deliberate indifference to children's mental illness, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §1983 (hereinafter referred to as "§1983").[4]

Corizon notes first that K.G. was a pre-trial juvenile detainee.  Therefore, she cannot assert a claim under the Eighth Amendment, which applies only to convicted persons and not to pre-trial detainees.  See Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994).

---

[4]  Corizon is a private entity that at all times pertinent to this action assisted in providing medical services to detainees at the Polk County Jail.  Corizon is not a state actor but for the purpose of this motion to dismiss it acknowledges that Plaintiff may allege that she meets the nexus/joint action test.

Accordingly, K.G.'s claims under the Eighth Amendment should be dismissed. Corizon does concede that the minimum standards for providing medical needs to inmates are the same under the Eighth Amendment and Fourteenth Amendment. However, K.G.'s claim under the Eighth Amendment is not recognized by law and should be dismissed.

Moreover, pursuant to the standard for deliberate indifference, K.G.'s claim for the alleged denial of medical care, as pled, does not rise to the level of deliberate indifference necessary to support a constitutional claim. K.G.'s claims are devoid of any factual allegations supporting the claim of deliberate indifference with respect to constitutional violations. Notably, the Second Amended Complaint is devoid of any proper allegations as to exactly what Corizon may have done that may be deemed a constitutional violation that allegedly places K.G. at risk. The Supreme Court has cautioned that not every allegation of inadequate medical treatment states a constitutional violation. Mann, 588 F.3d at 1307; see also Craig v. Floyd County, Georgia, 643 F.3d 1306 (11th Cir. 2011) (affirming district court's summary judgment on a pretrial detainee's claim for an alleged constitutional violation for improper medical care). In fact, mere negligence or a mistake in judgment, i.e. crushing Plaintiff's medication when it was administered, does not rise to the level of deliberate indifference required for a constitutional violation claim. Mann, 588 F.3d at 1307. K.G. fails to allege what specific damage, if any, results from taking medication which is "crushed" – even if contraindication. Crushed medication ensures that inmates are in fact taking the medication, rather than allowing them to simulate that they took it, and then later regurgitating it to be used as currency among inmates. Additionally, K.G. does not allege that the medication *she* was given was not the proper medication. The Fourteenth

Amendment is not a font of tort law that can be used, through § 1983, to convert state tort claims into federal causes of action. Neal v. Fulton County Bd. Of Ed., 229 F.3d 1069, 1074 (11th Cir. 2000). Hence, K.G.'s § 1983 claim against Corizon should be dismissed for failure to state a claim for relief.

Despite the foregoing, it should further be noted that K.G.'s claim should be dismissed as it amounts to nothing more than a state medical negligence claim disguised as a claim for constitutional violations. Under Florida's medical malpractice act, a plaintiff is required to serve a notice of intent to initiate medical malpractice within the limitations period set by Florida law, and is further required to engage in certain presuit procedures prior to filing a claim. See § 766.106(4), 766.106 Fla. Stat.; Hazen v. Kaplan, 734 So. 2d 441, 443 (Fla. 5th DCA 1999). In the instant case, K.G. has failed to adhere to any of the presuit requirements under Chapter 766, Florida Statutes, and cannot attempt to circumvent those requirements by filing the instant constitutional claims based on an alleged improper or wrongful medical treatment. Accordingly, the Second Amended Complaint should be dismissed for failure to comply with Chapter 766, Florida Statutes, statutory requirements.

**IV.     Plaintiff K.G. has Failed to Demonstrate her Entitlement to Injunctive Relief as Against this Defendant**

Lastly, to the extent K.G. appears to seek a preliminary and permanent injunction requiring that Corizon cease its alleged unconstitutional and unlawful practices. A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the proposing party; and (4) if issued, the injunction would not be adverse to the public

interest.  <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000).  In the Eleventh Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites.  <u>Id.</u>  A showing of irreparable injury is the *sine qua non* of injunctive relief.  <u>Id.</u>  As the Eleventh Circuit has emphasized on many occasions, the asserted irreparable injury must be neither remote nor speculative, but actual and imminent.  <u>Id.</u>

   In the instant case, K.G. has not established that she faces an actual and imminent threat of injury if injunctive relief is not granted.  Likewise, to the extent that K.G.'s claim may be for medical negligence under state law, Florida law also provides that a temporary injunction is an extraordinary and drastic remedy which should be sparingly granted.  <u>See Fla. High School Athletic Ass'n v. Melbourne Central Catholic High School</u>, 867 So.2d 1281, 1285 (Fla. 5th DCA 2004).  Also, under Florida law, generally, a party seeking a temporary injunction must establish: (1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent; and (4) that the granting of a temporary injunction will not harm the public interest. <u>Id.</u> at 1286.

   In the instant case, K.G. does not establish that she has a substantial likelihood of success on the merits.  To the contrary, K.G. has already conceded that she received medical attention during her stay at the Polk County Jail, and therefore has not been outright denied medical care.  Additionally, K.G. has failed to exhaust all administrative remedies available to her.  With regard to the third requirement for granting injunctive relief, K.G. has failed to

establish a real threatened injury.[5]  Finally, as to the fourth requirement, the public interest will be affected and harmed to the extent that Plaintiff is challenging a state law which authorizes Florida counties to house minors facing juvenile charges in county jails. Plaintiff's purported claim is a public policy argument that needs to be addressed with the legislative branch of government and not before this Court.  K.G.'s request for injunctive relief is not supported by law and should be denied.

WHEREFORE, this Defendant, CORIZON HEALTH, INC., respectfully requests that this Court dismiss Plaintiffs' Second Amended Complaint for failure to exhaust administrative remedies and failure to state a valid claim for relief, deny Plaintiffs' class certification of the second subclass as applied to this Defendant, and grant any other relief it deems appropriate.

s/ Jeanelle G. Bronson_____
JEANELLE G. BRONSON
Florida Bar No. 266337
PATRICK H. TELAN
Florida Bar No. 973874
RAMON VAZQUEZ
Florida Bar No.196274
Grower, Ketcham, Rutherford, Bronson
Eide & Telan, P.A.
PO Box 538065
Orlando, FL  32853-8065
Phone: 407-423-9545; Fax: 407-425-7104
Attorneys for Defendant, CORIZON HEALTH, INC.
E-Mail:      jgbronson@growerketcham.com
                phtelan@growerketcham.com
                rvazquez@growerketcham.com

---

[5]  In fact, although not alleged in the Second Amended Complaint, K.G. is no longer housed at the Polk County Jail.  Therefore, there is no threat of injury to K.G.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 22nd day of June, 2012, I electronically filed the foregoing with the Clerk of the Courts by using the ECF system which will send a notice of electronic filing to Tania Galloni, Esquire, Southern Poverty Law Center, P.O. Box 370037, Miami, FL  33137; Miriam Haskell, Esquire, Southern Poverty Law Center, P.O. Box 370037, Miami, GA  33137; David J. Hayden, Esquire, Baker & McKenzie, LLC, Sabadell Financial Center 1111 Brickell Ave Ste 1700, Miami, FL 33131; Joseph J. Mamounas, Esquire, Baker & McKenzie, LLC, Sabadell Financial Center 1111 Brickell Ave Ste 1700, Miami, FL  33131; Angela Vigil, Esquire, Baker & McKenzie, LLC, Sabadell Financial Center 1111 Brickell Ave Ste 1700, Miami, FL  33131; Hank B. Campbell, Esquire, Gray Robinson, P.A., Post Office Box 3, Lakeland, FL  33802-0003.

s/ Jeanelle G. Bronson
JEANELLE G. BRONSON
Florida Bar No. 266337
PATRICK H. TELAN
Florida Bar No. 973874
RAMON VAZQUEZ
Florida Bar No.196274
Grower, Ketcham, Rutherford, Bronson
Eide & Telan, P.A.
PO Box 538065
Orlando, FL  32853-8065
Phone: 407-423-9545; Fax: 407-425-7104
Attorneys for Defendant, CORIZON HEALTH, INC.
E-Mail:      jgbronson@growerketcham.com
             phtelan@growerketcham.com
             rvazquez@growerketcham.com