UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| CHANDA HUGHES, as guardian and on behalf of J.B., a minor; BRENDA SHEFFIELD, as guardian and on behalf of J.D., a minor; FRANKY JEAN-PIERRE, an individual; MICHELLE MINOR, as guardian and on behalf of J.P., a minor; LISA JOBE, as guardian and on behalf of K.J., a minor; AMY GAGE, as guardian and on behalf of B.G., a minor; CRYSTAL CUYLER, as guardian on behalf of D.M., a minor; NIKEYTA MATTHEWS, as guardian and on behalf of K.G., a minor; and ANITA NAVA, as guardian and on behalf of A.H., a minor; on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 8:12-cv-00568-SDM-MAP |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| GRADY JUDD, Polk County Sheriff, in his official capacity; and CORIZON HEALTH, INC., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**MOTION TO COMPEL THE DEPOSITION OF SHERIFF GRADY JUDD**

## INTRODUCTION

Plaintiffs, by and through undersigned counsel, respectfully move this Court to compel the deposition of Defendant Sheriff Grady Judd. Plaintiffs previously served a notice for Sheriff Judd's deposition on June 25, 2012. Plaintiffs did not seek prior approval from the Court pursuant to Local Rule 4.08 because Sheriff Judd is a county official and does not hold an elective state or federal office. Local Rule 4.08 provides:

> (a) Absent prior permission of the Court, no party shall cause to be issued and served any subpoena requiring the attendance, for deposition or for trial, of any state or federal judicial officer, or other person then holding an elective state or federal office.

At the June 28, 2012 status conference in this matter, however, the Court directed plaintiffs' counsel to Local Rule 4.08. Plaintiffs submit this brief to address Local Rule 4.08 and their request to depose Sheriff Judd.

## ARGUMENT

A.   Local Rule 4.08 is inapplicable in this instance because Sheriff Judd is not a state official.

Research disclosed no reported case interpreting Local Rule 4.08. In the context of seeking immunity from suit in federal court under the Eleventh Amendment, however, the Eleventh Circuit has consistently held that a Florida county sheriff is not a state official. *See Abusaid v. Hillsborough Cty. Bd. of Cty. Commissioners*, 405 F.3d 1298 (11th Cir. 2005). According to the *Abusaid* court, its prior precedent and the law of the State of Florida hold that "a Florida sheriff does not act as an arm of the state in enforcing a county ordinance." *Id.* at 1304.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, FL  33131  -  (305) 789-8900.

The *Abusaid* court set out the following test: "To determine whether the defendant, while engaged in the relevant function, acts as an arm of the state, we conduct a four-factor inquiry, taking into account (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) the source of the entity's funds; and (4) who bears financial responsibility for judgments entered against the entity." After analyzing the four factors, the court concluded that the county sheriff did not act as an arm of the state and was, thus, not entitled to immunity under the Eleventh Amendment. *Id.* at 1313-14.

As to the first factor, how state law defines the entity, the court observed that the Florida Supreme Court, in *Beard v. Hambrick*, 396 So. 2d 708 (Fla. 1981), held that "a sheriff is a 'county official,' and, as such, is an integral part of the 'county.'" *Id.* at 1305. The court also reviewed a Florida intermediate appellate court decision, *Jenne v. Maranto*, 825 So. 2d 409 (Fla. Dist. Ct. App. 2002), which set forth that "[t]he Florida Constitution names the Sheriff as a county official, not as an official of the State." *Id.* at 1306. The court also found persuasive that Florida's constitution allowed counties to abolish the office of sheriff completely. *Id.* at 1305. Based on the foregoing, the court found the first factor weighed heavily against the sheriff being an arm of the state.

The court found the second factor, the degree of state control over the sheriff, to be a mixed result that weighed against state status. As to most of the sheriff's day-to-day operations, the state retained no control over sheriffs. *Id.* at 1307. In extraordinary circumstances, however, the governor could "remove a county officer" or "enlist the sheriffs to keep the peace." *Id.* at 1307. By statute, the state also prescribes some function for sheriffs, however, the court held that this did not "transform sheriffs into state officers

in the execution of all duties." *Id.* at 1309. This factor weighed against state status since the claim related to the sheriff's actions in enforcing a county ordinance on behalf of the county. *Id.* at 1310.

The third factor, the source of the sheriff's funding, weighed heavily against state status since the sheriff's budgets "are funded entirely by county taxes." *Id.* The fourth factor, whether the state's treasury would be burdened by an adverse verdict against the sheriff, also weighed strongly in favor of the sheriff as a county official since no provision of Florida law authorizes state funds to satisfy such a judgment. *Id.* at 1312.

For the same reasons explained in *Abusaid*, the first, third and fourth factors weigh heavily against Sheriff Judd being recognized as a state official. The second factor weighs against Sheriff Judd acting as a state official since he is not acting under a state law but instead under the authority of his office and the Board of County Commissioners. *See* Press Release, Polk County Sheriff's Office, Polk County Juvenile Detention Facility Safe, Secure, & Cost Effective (October 31, 2011) ("[T]he Board of County Commissioners and I [Sheriff Judd] agreed to open a new detention facility for juveniles operated by the Sheriff's Office.").[1] Based on the reasoning of *Abusaid*, Sheriff Judd is not a state official. Thus, Plaintiffs should not be required to comply with Local Rule 4.08.

Alternatively, should this court find that Sheriff Judd is a state official triggering the requirement of Local Rule 4.08, Plaintiffs hereby request permission to subpoena Sheriff Judd for a deposition. Sheriff Judd's deposition is necessary for the reasons explained below.

---

[1] http://www.polksheriff.org/NewsRoom/News%20Releases/Pages/10-13-2011PolkCountyJuvenileDetentionFacilitySafe,Secure,CostEffective.aspx

B.   The Court should permit Sherriff Judd's deposition because he has personal unique knowledge of the relevant events.

Under the Federal Rules of Civil Procedure, Plaintiffs "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Balfour Beatty Rail, Inc. v. Vaccarello*, 2007 U.S. Dist. LEXIS 19525, *4 (M.D. Fla. 2007) ("the purpose of discovery under the Federal Rules is to require the disclosure of all relevant information"). "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (citing Moore's Federal Practice P26.69 (3d ed. 1976) and 8 Wright & Miller, Federal Practice & Procedure § 2037 (1970).

The Court should not issue a protective order prohibiting Sheriff Judd's deposition since he was heavily involved in the decision to move children into the Polk Central County Jail ("PCJ") and has unique knowledge of the relevant events surrounding the children's incarceration. Under the "apex" deposition rule, "[a] protective order precluding the deposition of a high-ranking executive officer will be granted where the officer possesses no unique knowledge regarding the underlying facts of the action and files a declaration stating his or her lack of knowledge." *Dart v. Acor*, 2008 U.S. Dist. LEXIS 37731, *4 (M.D. Fla. 2008) (quoting *McMahon v. Presidential Airways, Inc.*, 2006 U.S. Dist. LEXIS 4909 (M.D. Fla. Jan. 18, 2006)). *See. e.g., Thomas v. IBM*, 48 F.3d 478, 483 (10th Cir. 1995) (affirming the grant of a protective order precluding the deposition of the chairman of the Board of Directors of IBM because the chairman had no knowledge of

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, FL  33131  -  (305) 789-8900.

the employee claiming age discrimination or knowledge of the employee's work and signed an affidavit to that effect); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D. Okla. 2003) (granting protective order precluding depositions of executive officers where they filed affidavits disavowing any personal knowledge of the facts of the action). The rationale for the apex test is that generally "the CEO of a large corporation is familiar with the big picture of the operations of a company - and is not familiar with the day to day operations of a business." *Chick-Fil-A, Inc. v. CFT Development, LLC*, 2009 U.S. Dist. LEXIS 34496 (M.D. Fla. April 3, 2009).

"Considerations of an 'apex' deposition do not 'immunize' corporate executives from discovery practice." *Porter v. Eli Lilly & Co.*, 2007 U.S. Dist. LEXIS 40282, *8 (N.D. Ga. 2007). It may be inappropriate to depose an executive whose "only connection with the matter is the fact that he is the defendant corporation's CEO, with no direct involvement in or knowledge of the issues giving rise to the action." *In Re Mentor Corp. Obtape Transobturator Sling Products Litig.*, 2009 U.S. Dist. LEXIS 111149, *3 (M.D. Ga. 2009). Conversely, "where the executive has personal knowledge of and involvement in certain relevant matters or where conduct and knowledge of the highest corporate levels are relevant in the case, a deposition of the executive is generally permitted." *Id., see In re Bridgestone/Firestone, Inc. Tires Prods. Liability Litig.*, 205 F.R.D. 535, 536-37 (S.D. Ind. 2002) (permitting the deposition of the Chairman because he had personal knowledge of and involvement in several relevant matters); *see also Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 127 (D. Md. 2009) (permitting deposition of CEO where CEO was highly involved in business practices at issue in the lawsuit).

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, FL 33131 - (305) 789-8900.

Sheriff Judd advocated for the legislation that became Senate Bill 2112 (2011), which authorized county sheriffs to take over juvenile detention under standards promulgated by the Florida Sheriffs' Association rather than the Department of Juvenile Justice ("DJJ"). Once passed, Sheriff Judd stated that he and the "Board of County Commissioners . . . agreed to open a new detention facility for juveniles operated by the Sheriff's Office." Press Release, Polk County Sheriff's Office, Polk County Juvenile Detention Facility Safe, Secure, & Cost Effective (October 31, 2011).[2]

Once Sheriff Judd relocated the juveniles to the PCJ, the Polk County Sheriff's Office issued a press release wherein Sheriff Judd is quoted as stating, "We are now operating a better, safer, cleaner, and more modern facility with better trained personnel at a much lower cost." Press Release, Polk County Sheriff's Office, Polk County Sheriff's Office on pace to save between $1.6 to $2.4 million through operation of the PCSO Juvenile Detention Facility compared to Department of Juvenile Justice cost (February 21, 2012).[3]

Sheriff Judd is intimately involved in every aspect of the jail. A search of YouTube displays clips of Sheriff Judd detailing changes he has made at the PCJ. For example, he questioned his department as to why the incarcerated adults were receiving caffeine, juice, tea and coffee. Polk County Sheriff's Office, *Polk Sheriff: 24/7*, YouTube (uploaded by the Polk County Sheriff's Office on July 31, 2008).[4] As a result the following changes were made: incarcerated adults were given water instead of other drinks, crackers were

---

[2] http://www.polksheriff.org/NewsRoom/News%20Releases/Pages/10-13-2011PolkCountyJuvenileDetentionFacilitySafe,Secure,CostEffective.aspx
[3] http://www.polksheriff.org/NewsRoom/News%20Releases/Pages/02-21-2012.aspx
[4] http://www.youtube.com/watch?v=gyq9gY3u1yU (uploaded by the Polk County Sheriff's Office on July 31, 2008).

substituted for cornbread, and sandwiches were made using day-old bread. Sheriff Judd touted the savings to the taxpayers from the changes he instituted, which has been estimated at $200,000. On another occasion, Sheriff Judd explained to the press that it "bothered" him that the incarcerated adults could play basketball.[5] ABC Action News, WFTS-TV, Tampa, FL, *Sheriff removes basketball equipment from jails*, YouTube (ABC Television broadcast uploaded by ABC Action News on Dec. 23, 2010). Thereafter, Sheriff Judd had the incarcerated adults remove all the basketball hoops from the jail. These are just two examples demonstrating Sheriff's Judd's intimate involvement with the day to day operations at the PCJ.

Sheriff Judd has previously stated that "youths are . . . supervised by specially trained detention deputies, who have 832 hours of training rather than the 234 hours DJJ guards have." Jeff Roslow, *Lawsuit: Jail abuses juveniles*, Polk County Democrat, Apr. 11, 2012.[6] When asked about recent charges involving three youths accused of beating a 16-year-old youth in his cell, "Judd said not every fight can be prevented, whether it's in a jail or juvenile facility." *Id.* These statements demonstrate that Sheriff Judd can provide a wealth of information regarding what is necessary to operate the PCJ, which is relevant to this case and could lead to additional discoverable information.

Sheriff Judd's policies and procedures at the PCJ are the key issues in this case. He is not simply a figurehead. On the contrary, he is the final decision maker for the PCJ. He is responsible for the administration of the every day operation of the jail. As the policy

---

[5] http://www.youtube.com/watch?v=zj-aOOfa6ic&feature=related (uploaded by ABC Action News on Dec. 23, 2010).
[6] http://www.polkcountydemocrat.com/sunnews/bartow/3631888-458/sunnewspaperslawsuitjailabusesjuveniles.html.csp

8

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, FL  33131  -  (305) 789-8900.

maker for the PCJ, with the power and inclination to make even the most minute changes, his knowledge of the events and the policies he has instituted are relevant. Likewise, his decisions on issues pertaining to staffing and use of pepper spray are in issue in this case. His intimate knowledge of the jail could also lead to the discovery of additional admissible evidence.

Sheriff Judd, therefore, has personal knowledge relevant to this matter and is privy to unique information that cannot be obtained from other sources. The defendant cannot meet its burden to demonstrate the extraordinary circumstances necessary to prohibit his deposition. *See Van Den Eng v. Coleman Co., Inc.,* 2005 U.S. Dist. LEXIS 40720, at *6 (D. Kan. 2005) ("Granting a protective order that totally prohibits a deposition is considered a drastic action that will not be taken absent extraordinary circumstances.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court compel the deposition of Sheriff Grady Judd.

## CERTIFICATE OF CONFERENCE PURSUANT TO M.D. FLA. L.R. 3.01(g)

The undersigned certifies that prior to filing this Motion, counsel for Plaintiffs, Donald J. Hayden, conferred with Jonathan B. Trohn on July 3, 2012, counsel for Defendants, in an effort to resolve the relief sought in Plaintiffs' Motion to Compel the Deposition of Sheriff Grady Judd. Counsel for Defendants advised that he opposes the relief sought.

July 5, 2012                              Respectfully submitted,

                                         BAKER & McKENZIE LLP
                                         Donald J. Hayden, Florida Bar No. 097136
                                         donald.hayden@bakermckenzie.com
                                         Joseph J. Mamounas, Florida Bar No. 041517
                                         joseph.mamounas@bakermckenzie.com
                                         Sabadell Financial Center
                                         1111 Brickell Avenue, Suite 1700
                                         Miami, Florida 33131
                                         Telephone:  (305) 789-8900
                                         Facsimile:  (305) 789-8953

                                         Steven Chasin
                                         815 Connecticut Ave., N.W.
                                         Washington, DC 20006
                                         Telephone: +1 202 835 6132
                                         Facsimile: +1 202 416 7132
                                         steven.chasin@bakermckenzie.com

                                         Joseph P. Rindone
                                         1114 Avenue of the Americas
                                         New York, NY 10036
                                         Telephone: +1 212 626 4941
                                         Facsimile: +1 212 310 1723
                                         joseph.rindone@bakermckenzie.com

                                         SOUTHERN POVERTY LAW CENTER
                                         Tania Galloni, Florida Bar No. 19221
                                         tania.galloni@splcenter.org
                                         Miriam Haskell, Florida Bar No. 69033
                                         miriam.haskell@splcenter.org
                                         Sheila A. Bedi, Mississippi Bar No. 101652
                                         sheila.bedi@splcenter.org
                                         P.O. Box 370037
                                         Miami, Florida 33137
                                         Telephone: (786) 347-2056
                                         Facsimile:  (786) 237-2949

                                         s/ Donald J. Hayden
                                         Donald J. Hayden

                                         *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 5, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Donald J. Hayden
Donald J. Hayden

## SERVICE LIST

### CASE No. 8:12-cv-00568-SDM-MAP

Henry B. "Hank" Campbell
Jonathan B. Trohn
Robert J. Aranda
William Thompson McKinley
VALENTI CAMPBELL TROHN TOMAYO & ARANDA
1701 South Florida Avenue
Lakeland, FL 33803
Tel: (863) 686-0043
Fax: (863) 616-1445


Attorneys for Defendant, GRADY JUDD
Polk County Sheriff, in his official capacity


Ramon Vazquez
Jeanelle G. Bronson
Patrick H. Telan
GROWER, KETCHAM, RUTHERFORD, BRONSON
EIDE & TELAN, P.A.
P.O. Box 538065
Orlando, FL. 32853-8065
Tel.: 407-423-9545
Fax: 407-425-7104
Attorneys for Defendant, CORIZON HEALTH, INC.


405156-v1\MIADMS