**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHANDA HUGHES, as guardian and                )
on behalf of J.B., a minor, et al.,                       )
                                                                          )
     Plaintiffs,                                               )
                                                                          )
v.                                                                        )     Case No. 8:12-cv-00568-SDM-MAP
                                                                          )
GRADY JUDD, Polk County Sheriff, in            )
his official capacity; and CORIZON                 )
HEALTH, INC.,                                                 )
                                                                          )
     Defendants.                                             )
_____ )

## PLAINTIFFS' MOTION TO COMPEL ENTRY ONTO LAND AND REQUEST FOR EXPEDITED HEARING

Plaintiff-minors, by and through undersigned counsel, respectfully move the Court to compel Defendants to reasonably accommodate Plaintiffs' final expert inspections as requested in Plaintiffs' Second Request for Entry Onto Land.  Plaintiffs seek to have their experts conduct final inspections of the Polk County Jail on January 15- 17, 2013, for purposes of preparing the Plaintiffs' final expert reports, which are due by January 31, 2013.  As the issues raised in this motion are time-sensitive, Plaintiffs respectfully request that the Court hear this matter as soon as possible.

### I. BACKGROUND

On March 15, 2012, Plaintiffs filed this action against Defendant Grady Judd alleging constitutionally deficient conditions of confinement for children held at the Polk County Jail.  (Doc. 1.)  On March 21, 2012, Plaintiffs filed an Amended Complaint, an Amended Motion for Class Certification, and a Motion for a Preliminary Injunction. (Docs. 3-5.)  Plaintiffs' Motion for Preliminary Injunction was based only on Count 2 of

1

the complaint, which focuses on the jail's lack of adequate supervision of children, the prevalence of fights at the Polk County Jail, and use of chemical agents against youth. (Doc. 4.)

On May 3, 2012, Plaintiffs and Defendant Judd filed a Joint Case Management Report which included an agreed-upon Preliminary Injunction Hearing Protocol relative to any hearing on Plaintiffs' motion, then proposed for July 2012.[1]  (Doc. 42, at 2.)  In anticipation of a hearing, Plaintiffs requested, and Defendant Judd consented to, an expedited preliminary inspection of the Polk County Jail for purposes of Plaintiffs' Motion for Preliminary Injunction on Count 2 of the complaint.  (Id.)

On May 15, 2012, after a dispute arose as to the timing and scope of the inspection, Plaintiffs filed a Motion to Enforce and Compel.  (Doc. 49.)  On May 21, 2012, the Court granted the motion in part, ordering that Plaintiffs' conditions expert Paul DeMuro be permitted to conduct the preliminary inspection over a two-day period.  (Doc. 56.)  Mr. DeMuro conducted a roughly 6-hour inspection on May 22, 2012, and conducted interviews with youth the remainder of his time.  Throughout, Defendant Judd repeatedly acknowledged (and even insisted) that this was only a preliminary inspection, that it was limited for purposes of the preliminary injunction motion, and that full inspections would take place at a later date.  See infra Part III.A.

On November 9, 2012, by leave of Court, Plaintiffs filed their Third Amended Complaint, asserting 5 counts against the Defendants.  (Doc. 197.)  These claims are: (1) Failure to provide a rehabilitative environment to children subject to the jurisdiction of the juvenile court; (2) Dangerously violent conditions of confinement (including the

---

[1] At the time, Defendant Corizon Health, Inc., had not yet been added to the case.

unlawful use of pepper spray against children); (3) Punitive use of suicide watch; (4) Deliberate indifference to the serious mental health needs of children at the Polk County Jail; and (5) Harmful and unlawful use of isolation.

Plaintiffs now seek to have Mr. DeMuro and their mental health expert, Dr. Daphne Glindmeyer, conduct full inspections of the Polk County Jail for purposes of providing final expert opinions on the entirety of Plaintiffs' complaint, as has been contemplated since the earliest days of this action.  (See Exhibit 1, Plaintiffs' Second Request for Entry Onto Land.)  Specifically, Plaintiffs have requested that Mr. DeMuro be permitted to conduct an inspection over the course of 3 days, including approximately one day for youth interviews, and that Dr. Glindmeyer be permitted to inspect the facility over the course of two days, including approximately one day for youth interviews. Plaintiffs have offered to make their experts available at the same time so that both inspections can be completed in 3 days.

In response to Plaintiffs' request, Defendants Judd and Corizon Health, Inc., initially denied the request in its entirety.  (See Exhibit 2 (Defendant Judd's Response) and Exhibit 3 (Defendant Corizon's Response).)  Following the parties' pre-filing conference, Defendant Judd agreed to permit only Mr. DeMuro to conduct an inspection, and under unreasonably limiting restrictions.  (See Exhibit 4 (email correspondence between the parties).)  Disregarding the expedited, preliminary and limited nature of Mr. DeMuro's initial inspection—which at the time was acknowledged by all parties— Defendant Judd now claims that Mr. DeMuro need only be provided a "supplemental" inspection; that this inspection should be limited to the renovated dorm where males are now housed; and that Mr. DeMuro should only be permitted 4 hours at the jail (less time

3

even than his initial inspection).  As to the manner of this "supplemental" inspection, Defendant Judd would deny Mr. DeMuro the ability to actually observe the ordinary operation of the youth sections of the jail over time—including the interactions between staff and youth throughout the day; to review documents on site; and to speak with staff or youth in the housing areas.  These are the same limitations Defendant Judd imposed for Mr. DeMuro's May 2012 expedited inspection for purposes of Plaintiffs' Motion for Preliminary Injunction on Count 2, even though a full inspection is required at the merits stage of the litigation on the entirety of Plaintiffs' Third Amended Complaint.

As to Dr. Glindmeyer, who has been asked to evaluate the adequacy of mental health treatment (including Plaintiffs' allegations regarding the grossly deficient provision of psychotropic medications and inadequate suicide prevention practices) and to render opinions on the risk of psychological harm posed by the jail's use of cages, isolation and harmful suicide watch practices, both Defendants continue to object to any inspection.  Defendant Corizon has taken the position that Dr. Glindmeyer should be able to render her opinions solely through document review.

As shown below, Plaintiffs' request is reasonable, appropriate and necessary to permit Plaintiffs to present their claims now at the merits stage of this litigation.

## II. STANDARD

Under Federal Rule of Civil Procedure 26, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense or any party." Fed.R.Civ.P. 26(b).  For purposes of discovery, a party's inspection of the operation of a facility that is the subject of litigation is authorized by Rule 34.  Specifically, Rule 34(a)(2) provides:

> Any party may serve any other party a request to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection, measuring, surveying, photographing, testing or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

Fed.R.Civ.P. 34(a)(2).

Under Rule 37, a party may move for an order compelling an inspection where the opposing party "fails to permit inspection as requested under Rule 34." Fed.R.Civ.P. 37(a)(3)(B)(iv). Courts will generally grant requests for inspection provided they are "reasonably calculated to lead to admissible evidence." Murphy v. Cooper Tire & Rubber Co., 5:08CV40/RS/EMT, 2008 WL 3926715, at *3 (N.D. Fla. Aug. 21, 2008).

Comprehensive expert inspections are integral to jail conditions litigation, including in juvenile facilities. See, e.g., United States v. Erie County, 09-CV-849S, 2010 U.S.Dist. LEXIS 25646 (W.D.N.Y. Mar. 17, 2010); Coleman v. Wilson, 2:90-CV-00520, 2007 U.S.Dist. LEXIS 99928 (E.D.Cal. Oct. 25, 2007); Morales v. Turman, 59 FRD 157 (E.D.Tx. 1972) (authorizing participant observation study by four experts in two youth facilities for a period of 30 days).

### III. ARGUMENT

For purposes of the trial on the merits of Plaintiffs' Third Amended Complaint, which is composed of five counts, Plaintiffs have requested that their experts be permitted to conduct full on-site inspections of the Polk County Jail. Plaintiffs' requested inspections are reasonable, appropriate and necessary to their ability to present their claims for the final merits stage of this litigation.

**A. Plaintiffs' Initial Inspection Was Preliminary, Expedited and Limited At the Earliest Stage of This Litigation.**

Defendants have referred to Plaintiffs' request for the full expert inspection of the Polk County Jail relative to the allegations in the Third Amended Complaint as merely a "supplement" to Mr. DeMuro's May 2012 inspection.  Defendant suggests that the full inspection should be under the same restrictive conditions as the initial inspection, and even more limited in scope and time.

However, the history of this case demonstrates that Mr. DeMuro's initial inspection was preliminary, expedited and limited for the purposes of Plaintiffs' Motion for a Preliminary Injunction on Count 2, and therefore no substitute for the full inspections that still must be conducted as to the entirety of Plaintiffs' 5-count complaint. In fact, Defendant Judd was well aware of (and even insisted on) these limitations.

During the Court's May 4, 2012 status conference, for example, the Court noted that any discovery at the time, including Plaintiffs' initial Request for Entry onto Land, was preliminary at this stage and limited to the claims at issue in the motion for preliminary injunction.  (See Doc. 58, May 4, 2012 Tr., at 68:14-18.)  During a subsequent telephonic conference between the parties, Defendant's counsel said of the initial inspection: "Well, we're doing this on an expedited basis to allow you to inspect for the two issues on that you have identified for the preliminary injunction," as opposed to "a full-blown inspection."  (See Exhibit 5, Excerpt of May 10, 2012 Tr. 8:8-16.[2]) Defendant's counsel even suggested that the subsequent inspections involve both experts, stating "That is certainly appropriate, but not in the guise of an expedited emergency

---

[2] At that time, Defendant Judd's counsel had insisted to have phone conferences among counsel recorded and transcribed.  Defendant Judd previously filed with the Court the entirety of counsel's May 10 and May 14 telephone conferences.  (See Doc. 54-4.)

preliminary injunction inspection of the jail so that your expert can get acclimated both with a diagram or a floor plan and the actual facility itself."  (See Exhibit 6, Excerpt of May 14, 2012 Tr. 7:3-19.)  Defendant's counsel made clear that the initial inspection was expedited, limited and "with regard to the preliminary injunction, at least that's the way we see it, and not – it isn't for you to get everything that you need as regards discovery in this case."  (Id. 9:16-25.) Even in opposing Plaintiffs' Motion to Enforce and Compel, Defendant Judd again reiterated that the initial inspection was "preliminary… for purposes of Plaintiffs' Motion for Preliminary Injunction," and that the Defendant "has further agreed to a full inspection with both experts on a non-expedited basis in the future." (Doc. 54, at 8.)

During the May 2012 on-site inspection, Defendant Judd's many agents[3] repeatedly reminded Mr. DeMuro and Plaintiffs' counsel that the inspection was limited and only for purposes of the preliminary injunction motion.  Defendant Judd relied on this basis to deny Mr. DeMuro access to certain areas (such as the booking and transportation rooms), certain items (such as mechanical and other restraints used on children), and certain aspects of the facility (such as by instructing a Polk County School District teacher who had offered to explain the education program not to say anything to

---

[3] Despite Defendant Judd's complaint that this inspection would be "disruptive" of the facility's operation, and Plaintiffs' offer to limit the inspection to Plaintiffs' expert, a photographer, and one attorney for each side, it was Defendant Judd who amassed a total of nine representatives of the Polk County Sheriff's Office to accompany Mr. DeMuro on his inspection, including at least two high-level members of the Sheriff's Office (Major Michael Allen, Captain Kimberly Marcum, and at times also Chief Bryant Grant), four private attorneys (Hank Campbell, Robert Aranda, Jon Trohn, and Bill McKinley), and two in-house lawyers (Anne Gibson and at times Mario Cabrera).

Plaintiffs' expert).[4]  Defendant Judd also denied Mr. DeMuro the ability to fully inspect the ordinary operations of the jail by, for example, not allowing Mr. DeMuro to enter any of the housing units while children were present, not allowing Mr. DeMuro to observe ordinary interactions (including conversations) between children and staff, and not allowing Mr. DeMuro to interview children where they were housed.

During his July 17, 2012 deposition, Mr. DeMuro testified that he was not able to answer questions as to the adequacy of the jail's education, health and counseling practices as his initial inspection had been limited to protection from harm issues.  (See Exhibit 8, Excerpts of DeMuro Dep. Tr. 13:14-23.)  Mr. DeMuro further testified that he would require a future on-site inspection—including observation of the full running of the facility—to conduct a complete and final assessment in this case.  (Id. 33:7-35:15.)

When Plaintiffs moved to extend deadlines for their expert reports in October 2012, Plaintiffs cited as the bases for the relief sought: (1) the delay in receiving discovery relative to all counts of the complaint and necessary to Plaintiffs' experts' final reports; (2) Plaintiffs' experts' need to conduct a full assessment of the facility relative to all counts of the complaint; (3) changes to the facility as recent as October 2012; and (4) the pendency of Plaintiffs' motions for class certification, which could affect the scope of the final inspection.  (Doc. 174, at 3-5, 6-8.)

---

[4] By contrast, Defendant Judd permitted his expert, Richard M. Hough, to observe officers' interactions with children, on which he based opinions regarding the facility's positive behavioral system.  (See Exhibit 7, Excerpts of Hough Dep. Tr. 243:5-244:20.) Dr. Hough was also permitted inside the dorms while children were there, and was permitted to overhear their conversations—without parental consent.  (Id. 251:13-252:19.)  Lastly, Dr. Hough was permitted to engage in conversation not only with Defendant Judd's staff, but also with at least one Corizon employee and Polk County School District teachers.  (Id. 28:11-29:9.)

During the Court's November 2, 2012 hearing on the motion, Plaintiffs again specifically argued that additional time was required in order for their experts to conduct the full on-site assessment of the facility, evaluate any changes, and have access to class members.  (<u>See</u> Doc. 204, Nov. 2, 2012 Tr. 22:20-24:8.)  Neither Defendant Judd nor Defendant Corizon stated any objection at that time to such an assessment.  Similarly, neither Defendant indicated any objection in their written opposition to Plaintiffs' motion. (<u>See</u> Docs. 188, 189.)  When the Court inquired as to why a complete inspection was not conducted initially, Plaintiffs explained that the inspection had been limited for purposes of the expedited request for a hearing on Plaintiffs' Motion for Preliminary Injunction.  (<u>See</u> Doc. 204, Nov. 2, 2012 Tr. 24:9-25:17.)  Neither Defendant disputed this characterization, nor could they in light of the procedural history of this case.

As shown above, Defendants imposed and insisted on limitations on Mr. DeMuro's expedited preliminary inspection for purposes of the Motion for Preliminary Injunction, and have long known that a full assessment for the merits phase of the case would be required.  Defendant Judd acknowledged as much at the outset of this case.  For Defendants now to deny or unreasonably limit this assessment would unduly prejudice Plaintiffs' ability to litigate the merits of all of their claims.

**B. For the Merits Stage of this Litigation, Plaintiffs' Inspection by Conditions Expert Paul DeMuro Must Include (1) A Full Assessment of the Complete Operation of the Facility in Real Time; (2) Review of Documents On-Site; and (3) Interviews with Youths Where They Are Housed.**

In order to conduct a full assessment for purposes of the merits stage of this litigation, Plaintiffs' conditions expert Paul DeMuro must be able to observe the ordinary operations of the facility, including how the jail staff supervises children, manages their behavior, provides educational services, promotes rehabilitation, responds to incidents,

addresses suicide risks, imposes discipline and punishment (including use of the cages and isolation cells), and uses force against children.  Plaintiffs have requested that Mr. DeMuro be permitted to conduct his full and final assessment over the course of three days, including about a day or so for interviews with youths detained at the jail. Specifically, Plaintiffs have requested that Mr. DeMuro have access to all areas of the jail where children are detained or to which they may have access (including during the times when children are in fact in those areas), that he be permitted to review documents on-site as maintained in the regular course of business (such as incident reports and logs), and that he be allowed to interview a cross-section of children where they are housed.

Defendant Judd seeks to limit Mr. DeMuro's inspection to the renovated dorm where the boys are now housed, and to limit the duration of the inspection to only four (4) hours—fewer hours than were permitted for Mr. DeMuro's preliminary inspection for purposes of Plaintiffs' Motion for a Preliminary Injunction on Count 2 of the complaint. Defendant Judd also seeks to deny Mr. DeMuro access to documents maintained in the ordinary course of business (such as incident reports and logs) while he is on-site.  Lastly, Defendant Judd appears also to object to Mr. DeMuro's interviews of youth other than the named Plaintiffs.

These limitations are unreasonable and would preclude Mr. DeMuro's ability to conduct a complete assessment of how the Polk County Jail operates relative to Plaintiffs' allegations in the Third Amended Complaint.  They would unduly prejudice Plaintiffs' ability to fully and fairly litigate their pattern and practice claims for injunctive relief on behalf of themselves and all others similarly situated.

**1. Plaintiffs' Request for a Three-Day Conditions Inspection, Including Youth Interviews, is Reasonable.**

As an initial matter, in its May 21, 2012 Order, the Court found that permitting a preliminary inspection over the course of two days, including youth interviews, was reasonable and appropriate for purposes of Plaintiffs' Motion for Preliminary Injunction. For Defendants to seek to limit Mr. DeMuro's much more comprehensive assessment of the facility to four hours is patently unreasonable.

At the merits stage of this litigation, Plaintiffs' request that Mr. DeMuro be permitted to assess the operation of the jail for three days, including about one day for youth interviews, is reasonable. Mr. DeMuro requires sufficient time to evaluate all aspects of the facility's operation related to Plaintiffs' claims, including the adequacy of staff supervision throughout the day; the manner of admitting, classifying and housing children; staff interactions with youth; and the implementation of any policies related to programming, rehabilitation services, discipline and suicide prevention. Mr. DeMuro further requires about a day to interview a significant number of children held at the jail relative to all of the issues raised in Plaintiffs' complaint.

Plaintiffs therefore respectfully request that Mr. DeMuro's request for a three-day inspection be granted.

**2. Plaintiffs' Request That the Final Conditions Inspection Involve All Areas Where Juveniles Are Housed or to Which They May Have Access is Also Reasonable.**

Plaintiffs agree with Defendant Judd that it is significant for purposes of the inspection that the boys have been relocated to another part of the jail as of October 2012. That move, as well as other changes that Defendant Judd claims have been made to the structure and operation of the facility since Mr. DeMuro's preliminary inspection in May

2012, will require evaluation and assessment.  However, there is no basis to limit the scope of Mr. DeMuro's inspection solely to that housing area, or to limit the manner of the inspection to what was permitted at the earliest stages of this litigation.  Doing so would preclude Mr. DeMuro's ability to perform the complete assessment necessary for his final report.

### 3. Plaintiffs' Request for their Conditions Expert to Have Real Time Access to Discoverable Documents On-Site is Reasonable.

Plaintiffs further request that Mr. DeMuro be granted access to records regularly maintained in the course of business, as these will be necessary to his ability to evaluate the functioning of the facility in real time.  Past records provided in discovery will necessarily involve likely a several weeks' lag, if not more, and will not provide Mr. DeMuro with the information he needs to understand what is happening at the time that he is conducting his assessment.  For example, if a child is being housed in isolation, Mr. DeMuro would seek to review any related incident report, watch any available video recordings related to the incident, and interview the youth and possible witnesses, in order to inform his assessment.  Given that these records are discoverable, there is no basis for Defendants to object to Mr. DeMuro's ability to review them while he is on-site for purposes of his inspection.

Additionally, significant issues related to the maintenance of records have already come to light relative to missing incident reports for known uses of pepper spray.  The adequacy of Defendant Judd's record-keeping as to incidents involving children is therefore highly relevant to Mr. DeMuro's assessment.

### 4. Plaintiffs' Request for Mr. DeMuro to Interview Youths Where They Are Housed is Reasonable.

Lastly, Plaintiffs have requested that Mr. DeMuro be permitted to interview a significant cross-section of the youth at the jail at the time of his inspection, which he typically considers to be about 15-20% of the population.[5]  As is his practice, Mr. DeMuro seeks to conduct these interviews not in the artificial setting of the attorney booth, but in the same area where the youth are housed, which Mr. DeMuro finds to be important for this type of assessment.  These interviews are critical to Mr. DeMuro's ability to provide a comprehensive evaluation of the facility, particularly as pertains to Plaintiffs' allegations of a pattern and practice of constitutionally deficient conditions of confinement.

Although in May 2012 the Court denied Mr. DeMuro this type of access to the youth for purposes of his preliminary inspection, the Court expressly stated that "the narrow issue before me is what is to take place in advance of the preliminary injunction, and I'm going to keep the focus on the fact that the preliminary injunction is preliminary, it's not a final decision on the merits."  (Doc. 58, May 4, 2012 Tr. 68:14-18.)

The merits phase of the case, however, is fast approaching.  Plaintiffs' final expert reports are due by January 31, 2013.  It is therefore appropriate and essential that Mr. DeMuro be permitted to interview not only the named Plaintiffs, or other youths with whom Plaintiffs' counsel may have a relationship, but a representative sample of all

---

[5] Assuming an average population of 70-80 children, Mr. DeMuro would seek to interview between eleven and sixteen individuals, depending on the population at the time of his assessment.

children housed at the jail.[6]  Indeed, it is likely that none of the named Plaintiffs will be detained at the Polk County Jail at the time of Plaintiffs' final expert inspections.

Unlike at the time of the preliminary inspection in May 2012, the parties have now addressed privacy concerns through the execution of a Stipulated Protective Order on July 24, 2012 (Doc. 93), a Qualified HIPAA Protective Order on August 15, 2012 (Doc. 120), and a consent motion authorizing disclosure of confidential information, which was granted by the Court on August 21, 2012 (Docs. 121, 129).  The parties' July 24, 2012 Stipulated Protective Order expressly acknowledges that some of the information received through discovery will contain information that involves privacy and HIPAA concerns of third parties, and permits disclosure of this information to the parties' experts under the terms of the agreement.  (See Doc. 93, at 2 and 4 ¶ 5.c.)  The parties' Stipulated Protective Order is also expressly made binding on the parties' experts.  (Id., at 7 ¶ 15.)

Any concerns about interviews with youth other than the non-named Plaintiffs would also be cured by the Court's certification of the class as requested by Plaintiffs. While the Court's five-day preliminary injunction hearing was focused on Count 2 of the complaint, Plaintiffs believe that the Court nevertheless heard sufficient evidence to establish the existence of a class as relates to Plaintiffs' conditions of confinement claims.[7]  On November 19, 2012, the Court also heard argument on Plaintiffs' request for

---

[6] Without this access, it is quite likely that Defendants will seek to undermine the validity of Plaintiffs' expert opinions by intimating (as they have during the experts' depositions) that Plaintiffs' experts are basing their opinions on interviews with children "selected" by Plaintiffs' counsel.

[7] Plaintiffs submit that it would be premature to rule on class certification as to Count 4 of the complaint, given Corizon's refusal to provide necessary discovery related to the

certification of the primary class (all youth at the Polk County Jail) and the primary sub-class (all youth at the Polk County Jail under the sole jurisdiction of the juvenile court), both of which were the subject of Plaintiffs' March 21, 2012 Amended Motion for Class Certification.  (Doc. 5.)  Although the parties are scheduled to return to mediation on January 9, 2013, granting class certification would only help define the scope of the case and would not constitute a pronouncement on the merits.

For purposes of clarification, Plaintiffs' motions for class certification seek one primary class (all children at the Polk County Jail) and two sub-classes.  The first sub-class consists of those children under the sole jurisdiction of the juvenile court for purposes of Count 1.  (See e.g., Doc. 5, at 1-3, 4.)  The second sub-class consists of mentally ill children for purposes of Count 4.  (See Doc. 35.)  Plaintiffs have not sought certification of a sub-class as to the recently added isolation claim.  (Cf. Court's Dec. 4, 2012 Order, at 2.)  Rather, Plaintiffs have moved for the Count 5 isolation claim to be among the general conditions of confinement for which they seek certification of the primary class, consisting of all children detained at the Polk County Jail.  (See Doc. 137, at 6-9.)  Plaintiffs therefore believe that the motions for class certification are ripe as to Counts 1, 2, 3, and 5 of the Third Amended Complaint.  See, e.g., Baker v. Hamilton, 345 F.Supp. 345, 351 (W.D.Ky. 1972) (granting class certification for juveniles challenging conditions of confinement in adult jail).

---

existence of the class.  (See Plaintiffs' Motion to Compel, Doc. 206, at 15-16.)  Plaintiffs would request the opportunity to present evidence specifically as the propriety of a sub-class on that claim prior to the Court's ruling on certification as relates to that claim.

**C. For the Merits Stage of this Litigation, Plaintiffs Require Their Final Inspection to Include Mental Health Expert Dr. Daphne Glindmeyer.**

Plaintiffs have also requested that Dr. Daphne Glindmeyer be permitted to participate in the inspection of the Polk County Jail.  Dr. Glindmeyer's inspection is necessary for her to render expert opinions at the merits stage of this litigation as to Plaintiffs' allegations regarding the jail's constitutionally deficient mental health treatment and suicide prevention policies, as well as Plaintiffs' claims related to the harms caused by housing children in cages and isolation cells.  Defendants have long known that mental health issues would be part of a final inspection in this case.  When asked at her deposition whether the Polk County Jail met minimum standards, Dr. Glindmeyer testified that she would have to inspect the facility to see how those standards were being implemented.  (See Exhibit 9, Excerpts of Glindmeyer Dep. Tr. 111:11-19.)  Dr. Glindmeyer testified she had concerns about the mental health treatment at the jail based on the documents she had been provided, but that without an on-site inspection, she would not be able to render a final opinion as to the facility's compliance with minimum standards for mental health treatment and suicide risk assessment and prevention.  (Id. 122:11-124:18.)

As Dr. Glindmeyer is a psychiatrist and mental health expert, also experienced with secure juvenile facilities, her opinions are distinct and separate from those that will be provided by Mr. DeMuro.[8]  Dr. Glindmeyer will require two days, including time for youth interviews at the jail, to conduct her inspection relative to mental health concerns.

---

[8] Plaintiffs did not ask that Dr. Glindmeyer participate in the initial inspection of the facility as the preliminary opinion she rendered relative to the risk of harm caused to children by pepper spray did not require an on-site assessment.

Dr. Glindmeyer's inspection would include: observing the ordinary operation of the jail, including staff interaction with children throughout the day; inspecting all areas where children are housed, including the cages, isolation cells and any other areas used for suicide watch and direct and close observation; inspecting any areas where children may receive mental health services, including medication; interviews with youths at the jail who have mental health issues, have been on suicide watch, have been in isolation, or have been pepper sprayed; review of the on-site medical records of all youth interviewed; inspection of how medical records generally are organized and maintained on site; and observation of a handful of psychiatric consultations. Plaintiffs have offered to schedule their experts either for the same or different timeframes, whichever Defendants believe would minimize any disruption to the facility.

As Defendants have objected entirely to any inspection by Dr. Glindmeyer, Plaintiffs are unable to address any specific concerns Defendants may have as to the timing, scope and manner of the inspection. The only specific issue Defendants have raised pertains to privacy. As shown above, however, the parties' July and August 2012 stipulated agreements specifically address these issues, including HIPAA. Defendants should not be permitted to preclude Dr. Glindmeyer's inspection by raising privacy concerns that have already been addressed through agreed-upon protective orders, both of which specifically address third-party HIPAA issues and are binding on the parties' experts. (See Doc. 93, at 2, 4 ¶ 5.c., and 7 ¶ 15; Docs. 120, 121, 129.) Dr. Glindmeyer, who aside from serving as Plaintiffs' expert is herself a medical professional bound by ethical and professional rules regarding privacy, is bound to protect confidential information received in the course of this litigation per the parties' agreements.

Although Defendant Corizon has suggested that a document review should be sufficient for Dr. Glindmeyer's final expert opinions, it is worth noting that Corizon has substantially delayed or denied access to requested discovery other than the named Plaintiffs' medical records for months.  Plaintiffs, for example, have requested Corizon's policies and procedures regarding the medical treatment of children at the Polk County Jail since July.  But it was not until November 30, 2012 (and after Plaintiffs filed a Motion to Compel) that Corizon finally provided that very basic information.

Even as of the date of this filing, however, Corizon continues to refuse to provide other requested information, claiming that the information is not discoverable due to HIPAA, notwithstanding the parties' stipulated confidentiality order, the parties' stipulated HIPAA protective order, drafted by Corizon, and Plaintiffs' agreement to receive the records redacted.  Plaintiffs have briefed many of these issues in their pending Motion to Compel against Corizon.  (See Doc. 206, at 11-15.)

While document review is necessary prior to Dr. Glindmeyer's inspection, it is no substitute for it.  Dr. Glindmeyer must be able to evaluate the actual operation of the facility as it relates to Plaintiffs' claims involving mental health aspects, particularly the provision of psychotropic medications, the imposition of discipline such as the use of isolation cells and use of force, and suicide prevention practices.

Defendant Judd's own expert, Richard M. Hough, agrees that mental health issues are highly prevalent in the class the named Plaintiffs seek to represent.  (See Exhibit 10, Excerpt of Report by Richard M. Hough, at 11 ¶ 2.7 ("Estimates give the percentage of youth in the juvenile justice system with mental health problems to be over 50%, some as

high as 65-75%.").).[9] Plaintiffs submit that given the prevalence of mental illness, the nature of Plaintiffs' allegations regarding the constitutionally deficient provision of mental health treatment, punitive suicide prevention practices, and the substantial risk of psychological harm resulting from the patterns and practices challenged in this action, they are entitled to have their mental health expert participate in the on-site inspection requested here.

Once Plaintiffs have received the requested discovery from Corizon as to the putative sub-class of mentally ill children, Plaintiffs also believe class certification would be appropriate.  Moreover, if there remained any doubt as to the adequacy of the many existing privacy protections for interviews by Dr. Glindmeyer with members of the sub-class, certification would conclusively resolve that issue.  See, e.g., Flynn v. Doyle, 2007 U.S. Dist. LEXIS 22659, at *10-13 (E.D.Wis. Mar. 14, 2007); Dean v. Coughlin, 107 F.R.D. 331, 333-34 (S.D.N.Y. 1985); Newman v. Alabama, 349 F. Supp. 278 (M.D. Ala. 1972) (class action by prisoners alleging deliberate indifference to serious medical needs), aff'd, 503 F.2d 1320 (5th Cir. 1974).

### D. Plaintiffs' Requested Expert Inspections Will be Conducted with Due Regard to the Operation of the Facility.

Lastly, as the Court learned during the hearing on Plaintiffs' Motion for Preliminary Injunction, both of Plaintiffs' experts have extensive experience in secure facilities for juveniles, including having worked at high levels in such facilities themselves.  Mr. DeMuro and Dr. Glindmeyer also have extensive experience conducting inspections similar to those requested here, in conjunction with federal investigations and

---

[9] Defendant Judd submitted the entirety of this report as "Defendant's Exhibit 8" during the Court's hearing on Plaintiffs' Motion for Preliminary Injunction.

litigation related to juvenile conditions of confinement.  Plaintiffs' experts are therefore both sensitive to, and familiar with, how to minimize any disruption to the facility.  Most importantly, for purposes of their assessments, Plaintiffs' experts seek to avoid disruption so that they may understand the facility as it normally operates.

Additionally, Defendant Judd's representatives Captain Marcum and Major Allen testified before the Court that the facility regularly undergoes assessments, and that these are much more than just "paper reviews," and even involve inmate interviews.  (See Doc. 178, 9:7-12 ("[A]ssessors from all over the state come into your facility for approximately three to four days and along with the documentation review, they have to spend some time in your facilities, talk to your staff, talk to inmates to gain a prospective [sic] that you really are practicing what you're presenting to them in your documentation."); see id., at 10:4-13 (assessors "walk into the housing areas… they talk to your inmates and ask them various questions, you know, if their needs are being met, how often they receive privileges, what programs are available"); see also Doc. 179, 117:21-118:2 (assessors "talk to whoever they want to talk to, they look at whatever they ask to look at, and we show them whatever they want to see").)  Defendant Judd is therefore accustomed to having his facilities inspected.

As they did for purposes of the preliminary inspection, Plaintiffs again are amenable to limiting the participation in the inspection to their experts, a photographer, and an attorney for each side.  Plaintiffs have also offered to have both experts available during the same dates, January 15-17, 2013, should Defendants prefer.  Plaintiffs' requests are reasonable.  The information they seek is critical to the presentation of Plaintiffs' claims and determining the scope of any remedies.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this motion be granted.

December 7, 2012

Respectfully submitted,

/s/ Tania Galloni
Tania Galloni, Florida Bar No. 619221
Miriam Haskell, Florida Bar No. 69033
Manoj Govindaiah, Florida Bar No. 98510
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, Florida 33137
Telephone: (786) 347-2056
Facsimile:  (786) 237-2949
tania.galloni@splcenter.org
miriam.haskell@splcenter.org
manoj.govindaiah@splcenter.org

BAKER & McKENZIE LLP
Donald J. Hayden, Florida Bar No. 097136
donald.hayden@bakermckenzie.com
Sabadell Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile:  (305) 789-8953

Joseph P. Rindone (admitted pro hac vice)
1114 Avenue of the Americas
New York, NY 10036
Telephone: +1 212 626 4941
Facsimile: +1 212 310 1723
joseph.rindone@bakermckenzie.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF CONFERENCE

In accordance with Local Rule 3.01(g), Plaintiffs' counsel certifies that she conferred with counsel for Defendant Judd and Defendant Corizon in an effort to resolve the issues presented in this motion but was unable to do so.

/s/ Tania Galloni_____
Tania Galloni

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 7, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF.

By:      /s/ Tania Galloni_____
           Tania Galloni