UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHANDA HUGHES, et al.,

     Plaintiffs,

v.                                                                    CASE NO. 8:12-cv-568-T-23MAP

GRADY JUDD, et al.,

     Defendants.

_____/

## ORDER

     After successfully defending this class action, which challenged the constitutionality of the conditions of confinement for juvenile detainees at Polk County's Central County Jail in Bartow, Florida, Sheriff Grady Judd moves (Docs. 553, 576, 577) for a sanction equal to the attorney's fee and the costs the Sheriff incurred after the close of discovery.  Based on 28 U.S.C. § 1927 and the "inherent authority" of the court, the Sheriff asserts the claim against the plaintiffs' lawyers rather than against the plaintiffs.  The Sheriff asserts that, in light of the information revealed during the extensive discovery, the plaintiffs' lawyers by maintaining the action "intentionally" engaged in "unreasonable and vexatious conduct" that "multiplie[d] the proceedings" to such an extent as to establish the lawyers' sanctionable "bad faith."  Further, the Sheriff asserts that the plaintiffs'

lawyers in "bad faith, vexatiously, wantonly, or for oppressive reasons" maintained "objectively untenable" claims.

Addressing the facts of the case, the Sheriff attacks the *bona fides* of the plaintiffs' claims, including the Sheriff's alleged "punitive treatment" of juveniles, his alleged failure to "rehabilitate" juveniles in detention, his alleged indifference to violence among the juveniles, and his alleged indifference to the physical and mental health of the juveniles. The Sheriff asserts that, because they knew the plaintiffs' claims were meritless, the plaintiffs' lawyers chose "untrue, heightened, and emotional language . . . to conceal their lack of a case." Addressing the law in the case, the Sheriff concludes that the plaintiffs "purposely and repeatedly misrepresented the constitutional standard," the definition of which was paramount because the plaintiffs maintained each claim exclusively under the Fourteenth Amendment. The Sheriff contends that the plaintiffs' lawyers, realizing that neither the facts nor the law sustained the claims, "[had] a duty to discontinue their quest" no later than the close of discovery.

Describing themselves as "a not-for-profit, civil rights law office" and as "pro bono counsel," the plaintiffs' lawyers oppose the award of an attorney's fee and certain costs to the Sheriff and assert that the Sheriff "has not met the highly demanding standard of imposing sanctions." More pointedly, the plaintiffs explain that the "standard requires a showing of subjective bad faith." In arguing against "subjective bad faith," the plaintiffs recall both the denial of the defendants' motion

for summary judgment and the month-long trial, which included denial of the

defendants' motions for judgment as a matter of law.  Also, the plaintiffs recall the

magistrate judge's advisory and precatory comments in an order recommending

denial of the motion for a preliminary injunction.  Although the comments amounted

to no more than an *obiter dictum* based on a partial and preliminary record, the

plaintiffs — with aggressive optimism — infer from the order some penumbral

validation of their claims.  Similarly, as another item to negate the inference of bad

faith, the plaintiffs repair (unpersuasively) to the denial of the defendants' motion to

exclude the testimony of the plaintiffs' experts, Glendmeyer and DeMuro.  Finally,

the plaintiffs note (mistakenly) that no party has found an Eleventh Circuit decision

affirming the award of an attorney's fee as a sanction "in a case that has survived

summary judgment."[1]

   From pages 8 to 19 of the response (Doc. 582 at 14–25), the plaintiffs re-visit

the merits of their claims and raise exceptions to some of the analysis in the

conclusions of law and findings of fact.  Especially because of the comprehensive

scope of the findings and conclusions, selective revisitation is superfluous and

wasteful.  Further, most of the plaintiffs' arguments between pages 8 and 19

constitute fragile rationalization, immediately transparent to informed examination.

---

[1] The reasons that a district judge might deny summary judgment are many and varied, practical and theoretical, factual and legal — some relating to the apparent strength of the case, some relating to the strength of the lawyers, some relating to the history and duration of the proceedings, some relating to the prospects for the proceedings, and some relating to the district judge's perception of the state of the issues as the court of appeals might perceive them. For a plaintiff, the denial of a defendant's motion for summary judgment means only survival; speculation about any other meaning often partakes of futility.

The findings and conclusions stand as written.  In answer to pages 8 to 19 of the plaintiffs' response, I will add only that if an ethical and capable lawyer intends to argue for new or better or different law, the lawyer should say so straightaway rather than attempt to palm off irrelevant, unpersuasive, and arcane decisions (and settlement agreements and consent decrees) as the law of the land.

On page 20 of the response the plaintiffs argue that a sanction in this action will "chill" litigation designed "to protect the under-represented, including vulnerable populations and unpopular groups."  However, failing to punish sanctionable misconduct encourages further sanctionable misconduct, and no lawyer owns a license to freely commit sanctionable misconduct, no matter the nobility the lawyer attributes to the litigation's goals.  In all events, with an endowment fund in excess of $300 million and an annual operating fund of over $37 million, the Southern Poverty Law Center will experience no detectable "chill," even if required to pay the entire sanction that the Sheriff seeks (although some salutary increment of professional wisdom and discretion might accrue).

## CONCLUSION

Pursued in the interest of the taxpayers of Polk County, Florida, the Sheriff's motion presents a claim not at all lacking in force and certainly understandable from the Sheriff's vantage (out more than a million dollars of the taxpayers' money).  But, given the law's "demanding standard for imposing sanctions," the Sheriff's claim

- 4 -

falls (barely) short.  Before levying a sanction of the kind and magnitude sought in this instance, a judge must harbor a firm conviction, well-established in the record,[2] that the lawyers affirmatively violated the applicable standard, restated at the bottom of page 1 and the top of page 2 of this order.  Arriving at the "firm conviction" requires evidence of a quality, quantity, and specificity not present in this record.  In other words, the Sheriff's motion for the recovery of both an attorney's fee and costs as a sanction against the plaintiffs' lawyers is **DENIED** because the Sheriff's claim of the bad faith and vexatious maintenance of the plaintiffs' claims, although certainly colorable in the circumstance, is insufficiently evidenced in the record.

ORDERED in Tampa, Florida, on September 1, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[2] For an example of a sanction supported by a "firm conviction, well-established in the record," see *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 979 F.Supp.2d 1270 (M.D. Fla. 2013).